FALICJA MAZUROWSKI, petitioner
(and three companion cases[1]).

Hampden. September 23, 1953. — January 7, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Executor and Administrator*, Distribution. *Treaty. Constitutional Law*, Treaty. *Evidence*, Foreign law. *Statute*, Retroactive statute.

If a deceased resident of the United States leaving personalty here distributable by intestacy to his widow and next of kin in Poland was not himself a Polish national, provisions of a treaty between the United States and Poland securing the power of the nationals of either country to dispose of their personalty in the other country and the right of their "heirs, legatees and donees" to succeed to and obtain posesssion of the personalty would be inapplicable and would confer no rights on the widow and next of kin. [37]
Provisions of a treaty between the United States and Poland securing the

---

[1] The three companion cases are those of Bronislawa Mazurowski, Joseph Mazurowski, and Irene Mazurowski, who have filed petitions similar to that filed by Falicja Mazurowski.

power of the nationals of either country to dispose of their personalty in the other country and the right of their "heirs, legatees and donees" to succeed to and obtain possession of the personalty were designed primarily to protect the nationals of the foreign country against discrimination and did not give the widow and next of kin of a resident of Massachusetts, who died intestate leaving personalty here, any special or superior right to obtain possession of their distributive shares in the personalty in disregard of the reasonable regulations of Massachusetts law respecting the orderly settlement and distribution of decedents' estates, even if the intestate was a Polish national. [37–38]

In proceedings in a Probate Court by nationals and residents of Poland seeking payment to them of their distributive shares in the estate of a Massachusetts intestate deposited in a savings bank by previous order of the court, where the petitions were presented and pressed by the Polish consul claiming the right to act for the petitioners and to receive the funds in their behalf and the question of action under G. L. (Ter. Ed.) c. 206, § 27A, inserted by St. 1950, c. 265, was involved, the judge properly ruled that inasmuch as "there was no adverse party" he had the responsibility "to see that the proper parties . . . [were] entitled to receive the funds at their full value"; and it was proper for the judge and for this court to obtain from officials of the United States government and to consider information concerning rates of exchange and Polish regulations as bearing on the likelihood of the petitioners' receiving and retaining remittances of the funds at their full value. [38–39]

Where, in proceedings brought and pressed in a Probate Court by the Polish consul in the names of nationals and residents of Poland seeking payment to him in their behalf of their distributive shares in the estate of a Massachusetts intestate deposited in a savings bank by previous order of the court, it appeared likely in the circumstances that the petitioners themselves would receive and retain only a small fraction of remittances of the funds and that the remainder would in effect be confiscated by the Polish State, an application of G. L. (Ter. Ed.) c. 206, § 27A, inserted by St. 1950, c. 265, by merely temporary orders of the judge which required the appearance of each petitioner in person before the court "in order to assist in establishing . . . [his] identity, right, and opportunity to receive" his share and which had the effect of barring the petitioners from recovering the funds for the time being was a reasonable regulation of the final distribution of the intestate's estate in the interest of the petitioners and was not unconstitutional under art. 6 of the Constitution of the United States as contravening provisions of a treaty between the United States and Poland securing the power of the nationals of either country to dispose of their personalty in the other country and the right of their "heirs, legatees and donees" to succeed to and obtain possession of the personalty, even if the intestate was a Polish national. [39–41]

G. L. (Ter. Ed.) c. 206, § 27A, inserted by St. 1950, c. 265, could properly be applied in the final distribution of a decedent's estate even though enacted long after his death. [39–40]

FOUR PETITIONS, filed in the Probate Court for the county of Hampden on December 4, 1950.

Orders made by *Macaulay*, J., were reported to this court.

*Paul P. Flak & Emerson S. Searle*, for the petitioners and for the Consul General of Poland at New York, submitted a brief.

QUA, C.J.  One Leon Mazurowski of Springfield died intestate August 16, 1942, leaving personal property to be administered.  A public administrator was appointed.  Mazurowski had a wife, a son, and two daughters in Poland.  In 1944 the administrator, upon his petition for distribution, was required to deposit the distributive shares of the wife and children in a savings bank for their benefit.  *Allen v. Mazurowski*, 317 Mass. 218.  These four petitions are now brought by the wife and children to require payment to them of the balances of these bank deposits.[1]

The petitioners are nationals of Poland.  The petitions, although apparently signed by them, were presented and are still pressed by the consul general of Poland in New York, who has "jurisdiction" over Massachusetts, and who claims the right to act for the petitioners and to receive the deposits in their behalf both by virtue of his consular office and under powers of attorney from them executed and authenticated in Poland.  In each case the trial judge made an order under G. L. (Ter. Ed.) c. 206, § 27A, inserted by St. 1950, c. 265, requiring the appearance in person of each petitioner before the court "in order to assist in establishing such claimant's identity, right, and opportunity to receive such fund."  Each case was ordered continued until the appearance of the petitioner in court.  The judge of probate found that it was practically impossible for any of the petitioners to come from Poland to the court at the present time, and that his orders in effect bar them from recovering the funds until some undeterminable future time, dependent upon the course of world events.

---

[1] Small amounts from these deposits have previously been paid under decree of the court to the alien property custodian, presumably for expenses in establishing the rights of the present petitioners in the previous litigation.

The petitioners, through the consul general, contend that the orders of the judge are in contravention of certain articles contained in the treaty between this country and Poland, proclaimed by the President July 10, 1933, 48 U. S. Sts. at Large, Part 2, page 1507, and that in so far as the statute under which the judge purported to act may appear to authorize such orders it is unconstitutional because of the provision of the second paragraph of art. 6 of the Constitution of the United States that "all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding."

The statute under which the judge acted reads as follows: "Section 27A. Whenever payment of a legacy or distributive share cannot be made to the person entitled thereto, or such person may not receive or have the opportunity to obtain said legacy or distributive share, the court, on petition of an interested party or in its discretion, may order that the money be deposited in a savings bank or other like institution, or invested in the manner provided in section twenty-five, and disposed of in the manner provided in section twenty-eight. When a claimant to such funds resides outside of the United States or its territories, the court in its discretion, in order to assist in establishing such claimant's identity, right and opportunity to receive such fund, may require the appearance in person before the court of such claimant."

The orders appealed from were directly based upon the last sentence of the statute, but that sentence can hardly be considered without the first, and it seems necessary to deal with the statute as a whole.

The portions of the treaty with which the orders are said to conflict are found in the second paragraph of article 4, in the third paragraph of article 23, and in article 24. The passages in articles 23 and 24 relate to the right of consular officers as such to appear for their nationals in matters

concerning the administration and distribution of estates and in their behalf to collect and receipt for their distributive shares. We are informed by the Department of State that the treaty was terminated January 5, 1952, pursuant to a notice given to the Polish government on July 5, 1951. All special powers and privileges of consular officers as such, not being property rights, came to an end with the termination of the treaty, and we need not further consider articles 23 and 24.

Article 4, however, in its second paragraph, purports to confer property rights which might survive the termination of the treaty. See *Santovincenzo* v. *Egan*, 284 U. S. 30. That paragraph reads, "Nationals of either High Contracting Party may have full power to dispose of their personal property of every kind within the territories of the other, by testament, donation, or otherwise, and their heirs, legatees and donees, of whatsoever nationality, whether resident or non-resident, shall succeed to such personal property, and may take possession thereof, either by themselves or by others acting for them, and retain and dispose of the same at their pleasure subject to the payment of such duties or charges only as the nationals of the High Contracting Party within whose territories such property may be or belong shall be liable to pay in like cases."

Provisions in treaties phrased in this manner apply only where the decedent was a national of the foreign country. *Clark* v. *Allen*, 331 U. S. 503, 514–516. The record fails to disclose whether in this instance the decedent was a Polish national. If he was not, the treaty gave no rights to his widow and next of kin. But even if the decedent was a Polish national, we do not understand that article 4 of the treaty gave to his widow and next of kin paramount rights to seize their shares in his estate regardless of the laws of this Commonwealth providing for the orderly settlement and distribution of the estates of deceased persons domiciled here. The foreign heir or distributee acquires his rights by the law of this Commonwealth and is bound by the provisions of that law as to the time and manner of

distribution. *Lyeth* v. *Hoey*, 305 U. S. 188, 193. *Irving Trust Co.* v. *Day*, 314 U. S. 556, 562. *United States* v. *Burnison*, 339 U. S. 87, 91–92. The treaty did not purport to create special rights of succession in favor of aliens. *Clark* v. *Allen*, 331 U. S. 503, 517. No doubt the primary object and possibly the only effect in practice of the paragraph quoted from article 4 were to secure the nationals of the foreign State against discrimination.

The question then at once arises whether § 27A is any more than a reasonable local regulation governing the distribution of the estates of deceased residents. In answering that question it becomes necessary to take into account conditions existing today in certain foreign countries, including Poland, which the Legislature no doubt had in mind in enacting the statute. See article entitled "Estates and 'The Iron Curtain'" in Mass. Law Q., Vol. 35 (1950), No. 2, page 34. The judge of probate ruled, we think rightly, that "Inasmuch as there was no adverse party" the responsibility rested upon the judge "to see that the proper parties are entitled to receive the funds at their full value." Accordingly, acting sua sponte, he made inquiries from the Department of State and was advised that according to the information of that Department under Polish foreign exchange regulations dollar funds, whether remitted through banking channels or through a Polish consular officer, are retained by the Polish government and the persons to whom the remittances are directed receive Polish currency at the rate of approximately four zlotys to the dollar; and that the same regulations were understood to provide that permanent residents of that country must report to the government of Poland "against reimbursement in local currency" at the same rate. A recent communication to us from the Department of Justice confirms this information and further advises us that the prevailing free rate of exchange is approximately twenty zlotys to the dollar, and that United States government personnel in Poland are paid at the rate of twenty-five zlotys to the dollar. Moreover, by U. S. C. (1946 ed.) Title 31, § 123,

it is provided that no check or warrant drawn against funds of the United States shall be sent for delivery in a foreign country in any case in which the Secretary of the Treasury determines that postal, transportation or banking facilities in general, or local conditions in the country to which such check or warrant is to be delivered are such that there is not a reasonable assurance that the payee will actually receive such check or warrant and be able to negotiate the same for full value. The Secretary of the Treasury by Department Circular No. 655, as amended April 17, 1951, 16 Fed. Reg. 3479, determined that conditions in about a dozen named countries behind the "Iron Curtain," including Poland, were such "that there is not a reasonable assurance" that payees in those areas will actually receive such checks or warrants and be able to negotiate them for full value. There is no reason to suppose that a transfer of funds such as is sought by these petitions would meet with any better fate. We think that it was proper for the judge of probate to avail himself, and that it is proper for us to avail ourselves, of superior sources of information on such matters relating to foreign law and administrative regulations possessed by the high executive officers of the government, but not directly available to the courts or to litigants. *Universal Adjustment Corp.* v. *Midland Bank, Ltd.* 281 Mass. 303, 327. *Matter of Braier,* 305 N. Y. 148, at pages 157–158. G. L. (Ter. Ed.) c. 233, § 70.

The result of the best information we have been able to obtain is that there is no reasonable assurance that money sent to many of the countries behind the "Iron Curtain" will be received by the payees at full value, and that as to Poland, the payees would receive no more than about twenty per cent of full value, the remaining eighty per cent being in effect confiscated by the Polish State.

When projected against this background § 27A seems to us a reasonable and valid regulation of the final distribution of estates of deceased residents of this Commonwealth designed to preserve the property interests of the distributees. Such a regulation is binding upon distribu-

tees, even though enacted after the death of the decedent. "There is no vested right in a mode of procedure. Each succeeding legislature may establish a different one, providing only that in each are preserved the essential elements of protection." *Backus* v. *Fort Street Union Depot Co.* 169 U. S. 557, 570. *Gibbes* v. *Zimmerman*, 290 U. S. 326, 332. See *Wilbur* v. *Gilmore*, 21 Pick. 250, 252–253; *Simmons* v. *Hanover*, 23 Pick. 188, 193–194; *Sohier* v. *Massachusetts General Hospital*, 3 Cush. 483, 496; *Jewett* v. *Phillips*, 5 Allen, 150; *Magee* v. *Commissioner of Corporations & Taxation*, 256 Mass. 512, 516–517; 36 L. R. A. (N. S.) 1029, note; Cooley, Constitutional Limitations (8th ed.) 754–756. The statute is in no sense discriminatory against nationals of Poland or of any other country. It would apply equally, under similar conditions, to a national of the United States residing in Poland or other foreign country.

For a number of years the surrogates of New York have upheld and applied in respect to distributees in various countries a statute of that State generally similar to the first sentence of § 27A. *Matter of Weidberg*, 172 Misc. (N. Y.) 524 (Germany). *Matter of Geffen*, 199 Misc. (N. Y.) 756 (Lithuania). *Matter of Yee Yoke Ban*, 200 Misc. (N. Y.) 499 (China). *Matter of Best*, 200 Misc. (N. Y.) 332 (Soviet Union). *In re Rysiakiewicz' Will*, 114 N. Y. Sup. (2d) 504 (Poland). These and other similar decisions appear to have been confirmed by the Court of Appeals in *Matter of Braier*, 305 N. Y. 148[1] (Hungary). See *Estate of Blak*, 65 Cal. App. (2d) 232.

There may be more doubt about the second sentence of the statute, under which the present orders were made, than about the first sentence. If these orders were in their nature final and if they irrevocably established that the petitioners could have the deposits only by coming here for them, a very different case would be presented. But

---

[1] The case cited deals in part with so called "blocked" funds. No question of "blocking" arises in the case before us, since General License No. 97 of the Secretary of the Treasury, 13 Fed. Reg. 891, unblocked all funds in any account where the amount on February 1, 1948, did not exceed $5,000.

the orders are merely temporary. They could be made in the first place only "in order to assist in establishing such claimant's identity, right and opportunity to receive such fund" and they can be continued in effect only as long as the judge still feels that the identity, right and opportunity of the petitioners to receive the funds are not otherwise sufficiently established. The world is still in a state of flux and uncertainty. It is still possible that more nearly normal relations will be resumed between nations. It is possible that a more realistic rate of exchange will be officially adopted in Poland. Many unforeseen events may profoundly alter present conditions. We do not think that we can as yet say that the deposit of the money and the orders of the court amount to a deprivation of the petitioners' property rather than a protection of it, especially as the present alternative seems to be that in order to receive twenty per cent of their money they would be obliged to sacrifice the other eighty per cent.

The result is that the consul general is not now entitled to receive the deposits either in his official capacity or as attorney in fact for the petitioners, and that the orders of the judge of probate must be affirmed.

*Orders affirmed.*