FREDERICK R. RALSTON & others *vs.* COMMISSIONER OF
AGRICULTURE & another.

Middlesex.    March 9, 1956. — April 9, 1956.

Present: QUA, C.J., RONAN, WILKINS, COUNIHAN, & WHITTEMORE, JJ.

*Livestock Disease Control. Swine. Regulation. Evidence,* Judicial notice,
Federal regulation.

This court in the circumstances took judicial notice of certain Federal
regulations respecting disease of swine published in the Federal Regis-
ter, although the regulations had not been brought to the attention of
the trial court.  [53]
The general authority of the director of livestock disease control under
G. L. (Ter. Ed.) c. 129, § 2, to make reasonable regulations respecting
the transportation of swine in the interest of combatting vesicular
exanthema is not limited by §§ 14A, 14B, inserted by St. 1953, c. 655,
§ 2, dealing specifically with the combatting of that disease.  [55–56]
Regulations made in the interest of combatting vesicular exanthema,
requiring that anyone transporting swine on public ways in connec-
tion with the purchase or sale of the swine have in his possession and
exhibit on demand a "certificate of movement" or "health chart"
containing certain data respecting the owner or vendor and the move-
ment, that swine moved in violation of the regulations be quarantined,
and slaughtered if found to be affected with or exposed to vesicular
exanthema, and that vehicles be cleaned and disinfected; forbidding
the movement of swine fed on raw garbage into or within the Common-
wealth except directly to a slaughtering establishment for immediate
slaughter; and forbidding slaughtering establishments to receive swine
unless accompanied by a "certificate of movement" or "health
chart," were reasonable and valid under G. L. (Ter. Ed.) c. 129,
§ 2.  [57–58]
A provision of regulations made under G. L. (Ter. Ed.) c. 129, § 2, for
quarantine of swine transported in violation of other provisions of the
regulations was not contrary to § 21 of c. 129.  [57–58]

BILL IN EQUITY, filed in the Superior Court on July 1,
1955.

The suit was reported by *Sullivan,* J.

*Edward O. Proctor,* (*Edward O. Proctor, Jr.,* with him,)
for the plaintiffs.

*Fred L. True, Jr.,* Assistant Attorney ·General, for the
defendants.

WHITTEMORE, J.  The plaintiffs are in the business of raising, buying, and selling swine in the Commonwealth of Massachusetts in the course of which they feed garbage to swine.  The defendants are respectively commissioner of agriculture and director of live stock disease control for the Commonwealth.  The plaintiffs seek a declaratory decree in respect of and an injunction against the enforcement of certain regulations contained in Order No. 52 promulgated by the defendants and approved in council January 27, 1955.  The agreed facts state that there is a controversy between the parties as to whether the order is valid and enforceable (G. L. [Ter. Ed.] c. 231A, §§ 1, 2).  The case was reported to this court without decision.  Substantially no facts are shown other than those stated in this paragraph.

The terms of the order[1] show that it is concerned with

---

[1] Order 52 preceded by a reference to G. L. (Ter. Ed.) c. 129, § 2, and the parenthetical statement "(Transportation and garbage feeding of swine)" is as follows:

"To transportation companies, inspectors of animals and all persons whom it may concern: —

"Section 1.  No person shall feed garbage to swine without securing a permit therefor from the Director, the fee for which shall be five dollars, and said permit shall expire on December thirty-first following the date of issuance, unless sooner revoked.

"All garbage, regardless of previous processing, shall, before being fed to swine, be thoroughly heated to at least 212° F for at least thirty minutes unless treated in some other manner which shall be approved in writing by the Director as being equally effective.

"Section 2.  Any person who transports swine upon any public way in connection with the purchase or sale thereof, shall have in his possession a certificate of movement signed by the Director or his authorized agent or a health chart approved by the state of origin.  Said certificate or chart shall contain the name and address of the owner or vendor of such swine, the date of purchase or sale, the date of departure from original premises, the number of swine, some means of identification, and the destination of movement.

"Section 3.  Any person transporting swine shall on demand exhibit such certificate of movement to any officer qualified to serve criminal process or any duly authorized agent of the Director.

"Section 4.  All swine moved in violation of these regulations shall be quarantined at owner's expense and if found to be affected with or have been exposed to vesicular exanthema shall be slaughtered at a slaughtering establishment under federal supervision and products of such swine shall be subjected to special processing.

"Vehicles used in the transportation of swine shall be cleaned and disinfected at point of destination.

"Section 5.  State and federal agents authorized by the Director are empowered to inspect all swine or any premises on which swine are kept within the Commonwealth of Massachusetts.

"Section 6.  No swine fed on raw garbage shall be moved into or within the Commonwealth except for immediate slaughter directly to a slaughtering

the control and eradication of the disease in swine called vesicular exanthema.

Our statutes (G. L. [Ter. Ed.] c. 129, §§ 14A and 14B, inserted by St. 1953, c. 19 and c. 655), and the regulation, inform us in substance that vesicular exanthema is a disease which it is public policy to eradicate (see the emergency preamble) and that it is a disease of swine in the control of which garbage fed to swine must be cooked.

Federal regulations to which the defendants have made reference in the brief and which are not referred to in the record state more about the disease. As this case was reported without decision and the references which are made to the Federal regulations do not appear to suggest that evidence bearing thereon might have been adduced by the plaintiffs if the regulations had been earlier referred to, or that the plaintiffs will be otherwise prejudiced, we think this is an appropriate case for us to take judicial notice of the contents of the Federal Register, although it is clear that we are not required to do so where the subject material was not referred to below. *Mastrullo* v. *Ryan*, 328 Mass. 621, 622. The contents of the Federal Register are the subject of judicial notice by this court. U. S. C. (1952 ed.) Title 44, § 307. *Morrison* v. *Hutchins*, 158 Kans. 123. *Mogul Transportation Co.* v. *Larison*, 181 Ore. 252. *Weatherford* v. *Coffin*, 187 S. W. (2d) 406 (Tex. Civ. App.). *Hall* v. *Bucher*, 240 Mo. App. 1239. *Broadway Federal Savings &*

---

establishment under federal supervision and products of same shall be subjected to special processing.

"No slaughtering establishment whether under state or federal supervision shall receive any swine unless accompanied by a certificate of movement or a health chart approved by the state of origin.

"Section 7. All swine which are affected with or have been exposed to vesicular exanthema, as determined by the Director, shall be quarantined and shall be slaughtered at a slaughtering establishment under federal supervision and the products of such animals shall be processed.

"The provisions of this Order do not apply to swine which are under the control of the Animal Disease Eradication Branch of the United States Department of Agriculture.

"This Order shall become effective March 1, 1955 and shall be published by the Inspector of Animals in each city and town in the Commonwealth by filing a copy hereof with the City Clerk or the Town Clerk as the case may be and by posting a copy hereof in a conspicuous public place within the city or town for which he is the Inspector of Animals."

*Loan Association* v. *Howard,* 133 Cal. App. (2d) 382. See *Mazurowski, petitioner,* 331 Mass. 33, 39; *Glover* v. *Mitchell,* 319 Mass. 1, 3–4; *Mastrullo* v. *Ryan,* 328 Mass. 621. We notice the regulations not for proof of the facts alleged therein in respect of vesicular exanthema, but for proof of the fact that a Federal officer charged with responsibility in the field has said what he has said about the disease and has stated that certain controls are required and has imposed regulation accordingly.

A Federal regulation issued under U. S. C. (1952 ed.) Title 21, §§ 120, 111, 123, 125, and 117 (9 CFR § 76.26; 18 Fed. Reg. 3636, dated June 20, 1953), gives notice that vesicular exanthema is prevalent, is extremely virulent, is disseminated rapidly, is carried in virus infected meat scraps in raw garbage, and is causing great loss to livestock owners, the packing industry, and the consuming public. An earlier declaration of policy (18 Fed. Reg. 2358, issued April 17, 1953) states also that "each occurrence of the disease creates uncertainty lest it be an outbreak of the more dangerous foot-and-mouth disease, which would affect not only swine, but also cattle, sheep, and goats"; and that effective procedures include prompt disposition of infected and exposed animals, the cleaning and disinfecting of premises exposed to the disease as well as vehicles, yards, pens, and other facilities used in handling swine, and the cooking of garbage or special processing of the products of swine fed on raw garbage.

Prior to the adoption of the subject regulation there was Federal quarantine of part of Massachusetts in respect of vesicular exanthema which has continued. See 17 Fed. Reg. 10137; 19 Fed. Reg. 1367, 7178, 7870; 21 Fed. Reg. 1461, and references therein.

The plaintiffs assert that §§ 2, 3, 4, and 6 of the order are in excess of the authority of the director. Sections 1, 5, and 7 of the order are not attacked.

The defendants assert that full statutory authority for the order is found in G. L. (Ter. Ed.) c. 129, § 2, under reference to which it was issued. This statute provides in part:

"The director may make and enforce reasonable orders, rules and regulations relative to the following: the sanitary condition of . . . swine and of places where such animals are kept; the prevention, suppression and extirpation of contagious diseases of domestic animals . . . the inspection, examination, quarantine, care and treatment or destruction of domestic animals affected with or which have been exposed to contagious disease . . . and the cleansing and disinfection of places where contagion exists or has existed. No rules or regulations shall take effect until approved by the governor and council."

The plaintiffs contend that in those parts of c. 129 which make specific reference to vesicular exanthema, namely, §§ 14A and 14B, the Legislature has set forth the specific ways in which the disease, vesicular exanthema, shall be combatted, and that this has limited the general power which the director might otherwise have under § 2.[1]

We do not think that the director in combatting vesicular exanthema was deprived of all authority under § 2 because of the enactment of §§ 14A and 14B.

Chapter 129 has grown by accretion and does not show the tightness of structure and relevance of all parts to a single unifying concept in the drafting which would bring to the forefront considerations of close and consistent construction. We are aware of the practical consideration that even with an existing general power it may be a great aid to administrative officers like the director and commissioner

---

[1] Section 14A provides in part: "All domestic animals which are affected with . . . vesicular exanthema, as determined by the director, shall be quarantined . . . [and] shall be slaughtered . . . and the products of such animals shall be processed . . . All such animals, either too small, or too young, to be of value commercially as meat, shall be disposed of as the director directs. The director shall make such rules and regulations in respect to the importation into the commonwealth of such animals or products therefrom as he may deem necessary. The director shall also issue such directions for the cleansing and disinfection of buildings, premises and places in which . . . vesicular exanthema exists, or has existed . . . as in his opinion may be necessary . . . . No rules or regulations shall take effect until approved by the governor and council." Section 14B requires that after January 1, 1954, all garbage fed to swine shall be heated or otherwise treated. It also provides, "The director shall cause the premises of all permit holders to be inspected semi-monthly for the purpose of carrying out the provisions of this and the preceding sections." It contains other provisions in aid of the control of garbage fed to swine. (Included in some of the omitted parts of § 14A are references to vesicular stomatitis.)

here to have specific legislative authority, so far as it can be secured, to take drastic steps for the eradication of disease which will interfere with established business practices and impose unexpected losses. Knowledge of how to combat disease increases with experience, study, and research. The seriousness of the problem may increase at any time. Steps deemed adequate when determined upon may prove inadequate when tried or under changed conditions. The fields of health and the prevention, control, and extirpation of disease are particularly areas where a general power to act promptly and plenarily is essential. Such power if expressly given in such fields is not to be cut down by implication unless it is so strong as to make the intention surely and emphatically manifest.

The subject regulation in the aspects which the plaintiffs contest is, as it purports to be, substantially a regulation of transportation. The emphasis of §§ 14A and 14B of the statute is on regulation of swine in place and of the places where they are kept and these sections do not deal specifically with transportation as such. Section 14A provides that "The director shall make such rules and regulations in respect to the importation into the commonwealth of such animals or products therefrom [affected animals and products processed from them] as he may deem necessary." While interstate commerce involves transportation within the State it has connotations which might suggest the advisability of specific authorization to affect it.

It is of some significance, as the plaintiffs assert, that § 36D of c. 129, inserted by St. 1954, c. 647, § 3, is a specific statutory regulation of the transportation of cattle as a means of controlling brucellosis, and that in § 40, as appearing in St. 1946, c. 416, § 1, and § 41, inserted by St. 1941, c. 607, § 1, there is other specific statutory regulation of the transportation of bovine animals. But for the reasons already stated we do not think that these evidences of a loose and somewhat inconsistent statutory frame of reference require a holding of lack of authority for the subject regulation under § 2 of the statute.

The regulation of transportation as contained in the subject order was reasonable and within the director's power. The requirement of § 2 of the regulation that any person who transports swine upon any public way in connection with the purchase or sale thereof shall have in his possession a certificate of movement or a health chart which "shall contain the name and address of the owner or vendor of such swine, the date of purchase or sale, the date of departure from original premises, the number of swine, some means of identification, and the destination of movement," is not invalid because it applies to all swine whether or not diseased. Keeping track of origin, destination, and movement of swine is an obvious way to take first steps in controlling, preventing, and extirpating a disease of swine. *All* swine have to be looked at and otherwise dealt with in order to combat a disease that may be manifest or latent in any of them. It is obvious that transportation of animals presents hazards in respect of spreading disease which do not exist while the animals are kept in place in feeding pens or on the farm. All reasonable presumptions are to be made in favor of such a regulation. *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 138. What Federal authorities within their statutory orbit had said and done were relevant on the question of the reasonable need for the action taken. The information required to be on the chart or certificate is reasonably related to the proper purpose and there is no indication that it is burdensome to secure it. Even if it were, that would not be controlling. *Commonwealth* v. *Hudson*, 315 Mass. 335, 340. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523, 531.

For like reasons we hold valid and reasonable the requirements of § 3 to exhibit the subject documents, of § 4 that vehicles be cleaned and disinfected (see *Thornton* v. *United States*, 271 U. S. 414, 424), and of § 6 that "No slaughtering establishment . . . shall receive any swine unless accompanied by a certificate of movement or a health chart."

The plaintiffs contest the requirement of § 4 that swine moved in violation of the regulation be quarantined, on the

ground that the Legislature has made specific inconsistent provision as to quarantine by § 21 of c. 129. Section 21 provides that animals shall be quarantined when "An inspector . . . upon an examination of a domestic animal, suspects, or has reason to believe, that it is affected with a contagious disease." We think, contrary to the plaintiff's contention, that the import of this section is to support the regulation in this aspect. In the circumstances it is too narrow a construction to confine the inspector's relevant suspicions, upon inspection, to those which arise from what he sees in observation of the animal itself. The absence of a certificate or health chart discovered on examination of a shipment of swine, shows at least some likelihood that the subject swine have been fed raw garbage in violation of the regulation or for other significant reason could not be given a certificate or health chart. In any event, apart from § 21, it is a reasonable regulation of transportation of swine under § 2 of the statute to require that swine moved without any evidence that they are free of disease be held until it can be determined whether they are affected with or have been exposed to the disease. The destruction of affected or exposed animals which § 4 of the regulation requires is expressly authorized in § 2 of the statute. It is a usual means of combatting contagion. It is provided in § 7 of the regulation which is not contested. That this will put the owner to expense is a risk he elects to run when he undertakes to move the swine without the required papers.

Section 6 forbids the movement into or within the Commonwealth of swine fed on raw garbage except for immediate slaughter and special processing. It is consistent with § 14B of the statute and in aid thereof and of the declared statutory purpose of extirpating the disease. To restrict the movement of animals fed in the way which the Legislature has recognized as dangerous and made illegal is a reasonable exercise of the continuing broad power under § 2 of the statute. This regulation does not bar shipment to market. It takes potentially dangerous swine out of circulation which, as stated, is hazardous.

The substantial changes made in the statute by the repeal of § 14A, inserted by St. 1953, c. 19, and the insertion of a new § 14A and § 14B by St. 1953, c. 655, do not appear to bear on the aspects of the regulation contested by the plaintiffs.

A decree is to be entered that the subject regulation in the aspects in controversy is valid and enforceable.

*So ordered.*