ONE HOUR CLEANERS and State Farm
Fire and Casualty Company,
Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE OF COLORADO
and Susan M. Vickery, Respondents.

No. 95CA0178.

Colorado Court of Appeals,
Div. IV.

Dec. 21, 1995.

Rehearing Denied Feb. 22, 1996.

502

Paul S. Edwards & Associates, Fotios M. Burtzos, Christina M. Middendorf, Colorado Springs, for Petitioners.

Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs; Wilcox & Ogden, Ralph Ogden, Denver, for Respondent Susan M. Vickery.

No Appearance for Respondent Industrial Claim Appeals Office.

Opinion by Judge NEY.

In this workers' compensation case, petitioners, One Hour Cleaners, and its insurer, State Farm Fire & Casualty Company, seek review of a final order of the Industrial Claim Appeals Panel (Panel) ordering petitioners to pay for thermographic diagnostic procedures performed on Susan Vickery (claimant). We affirm.

Claimant sustained an industrial injury in the course of her employment. Her authorized treating physician referred her to another doctor for treatment of reflex sympathetic dystrophy. Petitioners refused to authorize the doctor and claimant petitioned for a change of authorized treating physician. After mediation and a hearing, the Administrative Law Judge (ALJ) authorized the change of physician and ordered petitioners to pay for all reasonable and necessary services provided by the physician.

Claimant's authorized physician determined that thermographic studies would aid in the diagnosis of claimant's reflex sympathetic dystrophy. Petitioners refused to pay for the thermography, but did not seek a medical utilization review of the recommended procedure. Claimant sought a hearing on the specific issue of petitioners' responsibility to pay for the thermography.

Petitioners filed a motion asserting that the scheduled hearing should be vacated because thermography was a medical benefit and there had been no mediation as to its authorization. Apparently, this motion was ignored and the matter proceeded to a hearing.

At the hearing, petitioners requested that the ALJ take judicial notice of several documents, including: (1) a final notice of the Health Care Financing Administration (HCFA) published in the Federal Register announcing the withdrawal of Medicare coverage for thermography for all indications; (2) a 1992 "advisory statement" of the American Academy of Orthopedic Surgeons stating its belief, as of the date of the statement, that thermography as a clinically useful diagnostic or prognostic test in orthopedic surgery could not be scientifically justified; (3) a 1993 resolution of the American Medical Association stating its policy that, as of the resolution's date, the use of thermography for diagnostic purposes could not be recommended; and (4) an unsigned resolution of the American College of Radiology stating its position that "thermography has not been demonstrated to have value as a screening, diagnostic, or adjunctive imaging tool." The ALJ ruled that she would not take judicial notice of these documents because judicial notice could only be taken of matters that are not subject to reasonable dispute.

Finally, the ALJ refused to allow petitioners to call an expert witness on the ground that they had failed to endorse the witness properly. Petitioners made an oral offer of proof of the expert's testimony.

The ALJ ruled that the thermography was reasonable and necessary and ordered petitioners to pay for the procedure. The Panel affirmed.

I.

■ Petitioners argue that the thermographic studies fall under the category of "authorized medical benefits" and therefore

the issue should have been mediated prior to the hearing. We disagree.

During the period relevant to this case, the Workers' Compensation Act mandated mediation for disputes involving a claimant's average weekly wage, changes in a claimant's health care provider, or authorized medical benefits. Colo. Sess. Laws 1991, ch. 219, § 8–43–205(1) at 1316.

■ In workers' compensation proceedings, "authorization" means "a physician's status as the health care provider legally authorized to treat an injured worker." *Mason Jar Restaurant v. Industrial Claim Appeals Office*, 862 P.2d 1026, 1029 (Colo.App. 1993). Thus, contrary to petitioners' contention, "authorization" refers to the treating physician rather than the particular medical treatment or procedure recommended by the authorized treating physician.

Petitioners' construction of "authorized medical benefits" would mean that each medical procedure proposed by an authorized treating physician and objected to by an insurer would be subject to mediation. Such a result would be contrary to the legislative purpose of the workers' compensation scheme, which is to assure quick and efficient delivery of disability and medical benefits to injured workers without litigation. *See* § 8–40–102(1), C.R.S. (1995 Cum.Supp.).

We agree with the Panel that, because "authorized medical benefits" refers to the legal authority of a provider to deliver care to a claimant, there was no requirement to mediate the issue.

## II.

■ Petitioners next contend that the ALJ erred in refusing to take judicial notice of the positions of a federal agency and three medical professional organizations concerning the effectiveness of thermography. We find no error requiring reversal.

CRE 201(b) provides that, for an adjudicative fact to be subject to judicial notice, it "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

■ Judicial notice may be taken of matters of public record and of common knowledge to an interested public. *See In Re Interrogatory by Governor Romer*, 814 P.2d 875 (Colo.1991). Also, rules and regulations promulgated by a governmental agency pursuant to the agency's statutory authority and published in an official state publication, such as Code of Colorado Regulations, may be judicially noticed. *Westfall v. Town of Hugo*, 851 P.2d 299 (Colo.App.1993).

■ However, judicial notice is to be used cautiously and only in cases in which the matters to be so noticed are of such common knowledge that they cannot reasonably be disputed. *Prestige Homes, Inc. v. Legouffe*, 658 P.2d 850 (Colo.1983).

One of the documents presented for judicial notice by petitioners, was published in the Federal Register by a federal agency pursuant to 44 U.S.C. § 1507 (1988). That document was a final notice of the HCFA announcing the withdrawal of Medicare coverage of thermography for all indications based on HCFA's determination that thermography is not effective in diagnosing or treating illness or injury. 57 Fed.Reg. 54799 (November 20, 1992).

44 U.S.C. § 1507 provides:

A document required by section 1505(a) of this title to be published in the Federal Register is not valid as against a person who has not had actual knowledge of it until the duplicate originals or certified copies of the document have been filed with the Office of the Federal Register and a copy may be available for public inspection as provided by section 1503 of this title. Unless otherwise specifically provided by statute, filing of a document, required or authorized to be published by section 1505 of this title, except in cases where notice by publication is insufficient in law, is sufficient to give notice of the contents of the document to a person subject to or affected by it. The publication in the Federal Register of a document creates a rebuttable presumption—

(1) that it was duly issued, prescribed, or promulgated;

(2) that it was filed with the Office of the Federal Register and made available for public inspection at the day and hour stated in the printed notation;

(3) that the copy contained in the Federal Register is a true copy of the original; and

(4) that all requirements of the chapter [44 U.S.C.S. § 1501 et seq.] and the regulations prescribed under it relative to the document have been complied with.

The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number.

■ Pursuant to this federal statute, a court is mandated to take judicial notice that a certain document exists, contains certain statements, and was duly published in the Federal Register. However, a court is not required to take judicial notice of the truth of the statements contained in the Federal Register document. *See Gilbert v. State*, 218 Cal.App.3d 234, 266 Cal.Rptr. 891 (1990)(judicial notice of documents goes to authenticity and contents of documents, not to truth of their contents); *Joslin v. H.A.S. Insurance Brokerage*, 184 Cal.App.3d 369, 228 Cal.Rptr. 878 (1986)(taking judicial notice of document is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning).

Accordingly, under this federal statute, the ALJ may have been required to take judicial notice of the fact that Medicare funding for thermography had been withdrawn and of the fact that HCFA, based on certain information available to it, found thermography to be not effective in diagnosing or treating illness or injury. Therefore, if the contested issue before the ALJ concerned whether Medicare would pay for thermography or whether HCFA had taken a position on thermography, judicial notice of these two facts would have been relevant and required. However, the dispute here turned on whether thermography was reasonable and necessary for claimant's treatment. Therefore, the ALJ could not take judicial notice of the disputed fact that thermography was ineffective. *See* CRE 201.

■ Alternatively, if, by virtue of 44 U.S.C. § 1507, the ALJ should have taken judicial notice of the Federal Register document for its limited probative value, any error resulting therefrom is harmless. The two facts that could be judicially noticed, *i.e.*, HCFA's refusal to make Medicare payments for thermography and its conclusion regarding the effectiveness of thermography, were not probative of whether thermography was reasonable and necessary for claimant's treatment. Therefore, refusing to take judicial notice of the Federal Register document did not prejudice petitioners.

■ We also reject petitioners' declaration that documents published in the Federal Register are the "law of the land." This sweeping declaration may apply to federal regulations duly promulgated by an agency in accordance with its statutory authority. However, the regulation at issue here is not a legally binding statement as to the value of thermography.

■ Petitioners also contend that the three reports or policy statements issued by medical organizations should have been judicially noticed because such documents were in the court file. We disagree.

■ We recognize that a court can take judicial notice of its own records and files. *Sakal v. Donnelly*, 30 Colo.App. 384, 494 P.2d 1316 (1972). However, these documents did not state facts that can be judicially noticed under CRE 201. The statements supported petitioners' position on the very issue the parties were litigating and do not set out facts that are generally known or capable of accurate and ready determination as required under CRE 201. *See* 9 J. Wigmore, *Evidence* § 2567 (1981).

■ Additionally, merely attaching the documents to a pleading that becomes part of the court's file does not make the contents of those documents subject to judicial notice.

Thus, we conclude that the ALJ did not err in denying petitioners' request to take judicial notice of the document contained in the Federal Register and the three policy

statements or reports of the medical organizations.

## III.

■ Petitioners' final contention is that the ALJ erred by denying petitioners' request to present testimony by an unendorsed expert witness. We disagree.

Petitioners listed their expert in their prehearing statement. However, they did not endorse this expert in the response to application for hearing or in any other pleading or motion. Petitioners argue that listing the witness in the prehearing statement is a sufficient endorsement and that, by excluding the testimony of the expert, the ALJ wrongly elevated form over substance. We disagree.

As pertinent here, adjudication Rules for Workers' Compensation Hearings Rule VIII(A)(5) precludes a party from adding a witness after filing an application for hearing or a response to an application except upon approval of an ALJ for good cause shown. Department of Labor & Employment Rule VIII(A)(5), 7 Code Colo. Reg. 1101–3. Further, the reliance on the prehearing statement and on some "understanding" based on discussions which took place at the prehearing conference cannot substitute for that which must appear of record. *See Standard Metals Corp. v. Gallegos,* 781 P.2d 142 (Colo. App.1989)(where claimant fails to follow proper procedure, findings of Panel will not be disturbed).

■ A tribunal has broad discretion to determine the admissibility of expert testimony and appellate courts may not overturn a ruling unless it is manifestly erroneous. *Campbell v. People,* 814 P.2d 1 (Colo.1991). An ALJ is accorded similar discretion in a workers' compensation proceeding. *See* § 8–43–210, C.R.S. (1995 Cum.Supp.)(rules of evidence of district courts applicable in workers' compensation hearings).

The ALJ here correctly ruled that a prehearing statement does not have the effect of an order and correctly informed petitioners' counsel that witnesses are endorsed only by order from an ALJ or from the prehearing ALJ, or from approved amendments to the application for a hearing or the response to application for a hearing.

Accordingly, we perceive no abuse of discretion.

## IV.

■ We deny claimant's requests for an award of attorney fees based on the frivolous and groundless nature of the appeal. We conclude that petitioners' contentions have some rational basis in law and, therefore, are not frivolous. *See Lego v. Schmidt,* 805 P.2d 1119 (Colo.App.1990).

The order is affirmed.

KAPELKE, J., concurs.

TAUBMAN, J., dissents.

Judge TAUBMAN dissenting.

Because I believe that the contents of the Federal Register concerning the effectiveness of thermography were both relevant and material, I would hold that the Administrative Law Judge (ALJ) and the Industrial Claim Appeals Office (Panel) committed reversible error by not taking judicial notice of this document. Accordingly, I respectfully dissent.

As the majority correctly notes, 44 U.S.C. § 1507 (1988) provides in pertinent part that: "The contents of the Federal Register shall be judicially noticed and[,] without prejudice to any other mode of citation, may be cited by volume and page number." ·

Pursuant to CRE 402, all relevant evidence, subject to certain exceptions, is admissible, and evidence which is not relevant is not admissible. A matter to be judicially noticed must also be relevant. *See Mozzetti v. City of Brisbane,* 67 Cal.App.3d 565, 136 Cal.Rptr. 751 (1977). Under CRE 401, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Additionally, CRE 103(a) requires that error may not be predicated upon a ruling

excluding evidence unless a substantial right of a party is affected.

Further, as noted by the majority, taking judicial notice of the "contents" of the Federal Register is not equivalent to taking judicial notice of the truth of those contents. *See Gilbert v. State,* 218 Cal.App.3d 234, 266 Cal. Rptr. 891 (1990); *Ralston v. Hawes,* 334 Mass. 51, 133 N.E.2d 589 (1956).

Here, petitioners sought to have the ALJ take judicial notice of a "final notice" published by the Health Care Financing Administration (HCFA), a division of the Department of Health and Human Services, entitled, "Medicare Program; Withdrawal of Coverage of Thermography." 57 Fed.Reg. 54798 (November 20, 1992). This notice announced HCFA's withdrawal of Medicare coverage of thermography for all indications based upon its conclusion that thermography is not effective in diagnosing or treating illness or injury. The notice described the legal basis for HCFA originally providing reimbursement for the use of thermography and also studies it reviewed in concluding that thermography was no longer effective.

The Federal Register notice explained that among the statutory provisions relevant to the determination of coverage is § 1862(a)(1)(A) of the Social Security Act, which prohibits payment for any expenses incurred for items or services *"which are not reasonable or necessary* for the diagnosis or treatment of illness or injury or to improve the functioning of malformed body member." (emphasis added)

The notice continued:

We have interpreted the term (reasonable and necessary) to exclude from Medicare coverage those medical and other health care services that are not safe and effective, as established by acceptable clinical evidence. Generally stated, we consider effectiveness to mean that there is probability of benefit to individuals from a medical item, service, or a procedure for a given medical problem under average conditions of use: that is, in day-to-day medical practice. In day-to-day medical practice, physicians diagnose and treat clinical conditions following inquiry into an individual's medical history, performance of a physical examination, and interpretations of a variety of diagnostic tests and procedures. Among other things, we expect that a covered diagnostic test or procedure will provide useful data to establish or rule out the presence of a given disease or injury.

57 Fed.Reg. at 54799.

Here, the issue is whether petitioners were required to pay for "thermographic studies" prescribed by an authorized treating physician. The Panel noted in its decision that the determination of this issue depended upon whether thermography constituted reasonable and necessary medical treatment. *See* § 8–42–101(1)(a), C.R.S. (1995 Cum.Supp.) (every employer shall "furnish such medical ... treatment ... as may *reasonably be needed* at the time of the injury or occupational disease and thereafter during the disability to cure and relieve the employee from the effects of the injury." (emphasis added)).

In my view, 44 U.S.C. § 1507 required both the ALJ and the Panel to take judicial notice of the contents of the above described HCFA notice concerning its view of the utility of thermography. As long as this information was relevant and not otherwise excludable, it should have been considered.

Because the standards for Medicare coverage of thermography (items or services which are reasonable and necessary) are so similar to the standards at issue here under the Workers' Compensation Act, evidence that HCFA had concluded that thermography was not a reasonable and necessary treatment was certainly relevant.

This, of course, is not to admit the truth of the contents of the Federal Register. To do that would require one to accept at face value the statements contained in the Federal Register that thermography in fact was not a reasonable or necessary medical treatment. However, taking judicial notice of the contents of the Federal Register would still allow a factfinder to consider the weight, if any, to give to the fact that a federal agency had taken the position it did with respect to the utility of thermography and the issue of coverage under the Workers' Compensation Act.

In my view, it is insufficient to conclude, as the ALJ did, that the contents of the Federal Register were inadmissible because they demonstrated that the effectiveness of thermography was subject to reasonable dispute and, therefore, for that very reason, were not a proper subject of judicial notice under CRE 201. That analysis reflects a confusion between taking judicial notice of the contents, as opposed to the truth of the contents, of the Federal Register.

As noted, allowing judicial notice of the contents of the Federal Register would, in effect, merely constitute admission of probative evidence on the issue of whether thermography was a reasonable and necessary treatment. Further, 44 U.S.C. § 1507 provides a specific requirement that the contents of the Federal Register must be judicially noticed, and I perceive no basis for that federal statute to be ignored here.

I also disagree with the majority that the ALJ's failure to take judicial notice of the contents of the Federal Register here, if error at all, was harmless.

I agree that the ALJ properly denied petitioners' request to allow an unendorsed expert witness to testify; thus, petitioners were not able to present any evidence concerning their view that thermography was not a reasonable and necessary medical procedure. Under these circumstances, the refusal to take judicial notice of the contents of the Federal Register adversely affected a substantial right of petitioners and therefore was not harmless error.

Accordingly, I would set aside the order of the Panel and remand for further proceedings.