24CA0088 Peo in Interest of AH 08-15-2024 COLORADO COURT OF APPEALS Court of Appeals No. 24CA0088 Larimer County District Court No. 22JV30064 Honorable C. Michelle Brinegar, Judge The People of the State of Colorado, Appellee, In the Interest of A.H., III, a Child, and Concerning A.S., Appellant. JUDGMENT AFFIRMED Division VI Opinion by JUDGE SCHUTZ Freyre and Graham*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 15, 2024 William G. Ressue, County Attorney, Kara Clark, Assistant County Attorney, Fort Collins, Colorado, for Appellee Josi McCauley, Guardian Ad litem Patrick R. Henson, Office of Respondent Parents’ Counsel, Chelsea A. Carr, Office of Respondent Parents’ Counsel, Denver, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023.
1 ¶ 1 In this dependency and neglect proceeding, A.S. (mother) appeals the juvenile court’s judgment terminating her parent-child legal relationship with A.H., III (the child). Mother argues that the juvenile court erred by taking judicial notice of a fact from A.H., II’s (father’s) criminal case and by allowing hearsay testimony. We affirm the judgment. I. Background ¶ 2 In July 2022, the Larimer County Department of Human Services, Children, Youth and Family (the department) filed a petition in dependency or neglect regarding the two-month-old child. The petition alleged that medical personnel had concerns that the child was not gaining weight, and that mother threatened to leave the hospital against medical advice. The department also alleged that father tested positive for methamphetamine, that the parents had been involved in several domestic violence incidents, and that protection orders prevented them from having contact with each other. ¶ 3 Mother stipulated to a deferred adjudication under section 19-
3-505(5), C.R.S. 2023, and the court adopted a treatment plan. 
2 ¶ 4 The department later moved to revoke mother’s deferred adjudication, arguing that she was not complying with her treatment plan. Mother did not object, and the juvenile court adjudicated the child dependent and neglected. ¶ 5 The department then moved to terminate mother’s parental rights. After a hearing held in December 2023, the juvenile court granted the motion. II. Standard of Review ¶ 6 Both contentions raised by mother require us to review the juvenile court’s evidentiary rulings. ¶ 7 We review a juvenile court’s decision to take judicial notice and to admit or exclude evidence for an abuse of discretion. Vento v. Colo. Nat’l Bank, 985 P.2d 48, 52 (Colo. App. 1999); People in Interest of M.H-K., 2018 COA 178, ¶ 60. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. People in Interest of E.R., 2018 COA 58, ¶ 6. ¶ 8 An error in the admission of evidence is harmless if it does not affect a substantial right of a party. CRE 103(a); C.R.C.P. 61. An error affects a substantial right if it can be said with fair assurance 
3 that it substantially influenced the outcome of the case or impaired the basic fairness of the proceedings. People in Interest of R.J., 2019 COA 109, ¶ 22. III. Judicial Notice ¶ 9 Mother first argues that the juvenile court erred by taking judicial notice of an address listed for her in one of father’s criminal cases. We disagree. A. Relevant Law ¶ 10 A court may take judicial notice of an adjudicative fact that is not subject to reasonable dispute because it is “capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.” CRE 201(b)(2). Court records are recognized as sources whose accuracy cannot be reasonably questioned; therefore, a court may take judicial notice of its own file, its factual findings, and legal conclusions. People in Interest of O.J.S., 844 P.2d 1230, 1233 (Colo. App. 1992), aff’d sub nom. D.A.S. v. People, 863 P.2d 291 (Colo. 1993). A court may also take judicial notice of the contents of court records in related proceedings. People v. Sa’ra, 117 P.3d 51, 56 (Colo. App. 2004). 
4 ¶ 11 “A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” CRE 201(b). “This rule governs only judicial notice of adjudicative facts.” CRE 201(a) (emphasis added). Adjudicative facts are “the facts of the particular case, as distinguished from, among others, facts with relevance to legal reasoning and the lawmaking process. . . .” Doyle v. People, 2015 CO 10, ¶ 9; see also People in Interest of I.S., 2017 COA 155, ¶ 8 (“By noticing the People’s appendix and the district court’s finding in it, we recognize the procedural effect of that finding on this appeal, not any material adjudicative effect it might have on the case’s merits.”). ¶ 12 “A court shall take judicial notice if requested by a party and supplied with the necessary information.” CRE 201(d). “However, “a court may not take judicial notice of facts on the very issue the parties are litigating.” Mun. Subdistrict N. Colo. Water Conservancy Dist. v. OXY USA, Inc., 990 P.2d 701, 711 (Colo. 1999). Accordingly, a court may take notice that a specific document exists within the 
5 court file, but this “is not the same as accepting the truth of its contents or accepting a particular interpretation of its meaning.” One Hour Cleaners v. Ind. Claim Appeals Off., 914 P.2d 501, 505 (Colo. App. 1995) (citing Joslin v. H.A.S. Ins. Brokerage, 184 Cal. App.3d 369, 228 Cal. Rptr. 878 (1986)). B. Analysis ¶ 13 The child’s guardian ad litem asked the juvenile court to take judicial notice of mother’s address listed in one of father’s criminal cases. Although not articulated, this fact presumably showed that mother continued a relationship with father despite telling the department she was no longer having contact with him because of their ongoing domestic violence incidents. ¶ 14 Mother objected, arguing that the address was not an “adjudicative fact” but rather “something contained in a criminal record” and was unreliable. The court overruled the objection and took notice of the address, however it also stated, “whether it’s accurate or not, I have no idea.” ¶ 15 Assuming, without deciding, that the juvenile court erred by taking judicial notice of mother’s listed address in father’s criminal file, we conclude that any error was harmless. The juvenile court 
6 noted that the address itself had little evidentiary value because it did not know if the address was accurate. Moreover, the address was that of a hotel that mother admitted she had been living in for the four months leading up to the termination hearing. ¶ 16 On appeal, mother argues that the error prejudiced her because the court specifically referenced “its judicial notice” to find that mother was not in compliance with part of her treatment plan. But the section of the court’s judgment mother references does not refer to her address, but rather to mother’s efforts to lift the criminal protection orders in father’s criminal cases. ¶ 17 Mother did not object to the juvenile court taking judicial notice of her filings to lift the various protection orders from father’s criminal cases prohibiting contact. Additionally, one of the Department’s caseworkers testified that she attended hearings in father’s criminal cases and personally witnessed mother requesting that the protection orders be lifted. ¶ 18 Accordingly, we conclude that even if the juvenile court did err by taking judicial notice of any facts from father’s criminal case, any error was harmless. 
7 IV. Hearsay ¶ 19 Mother also argues that the juvenile court reversibly erred by allowing the department’s caseworker to provide hearsay testimony. We are not persuaded. A. Relevant Law ¶ 20 Hearsay “is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” CRE 801(c). Hearsay is generally not admissible unless an exception applies. See CRE 802. ¶ 21 An expert may rely on facts that are not otherwise admissible if the facts formed the basis of the expert’s opinion and are of the type reasonably relied on by experts in that field. CRE 703 (“If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.”). Thus, expert opinions may be based on reports and information obtained from others. See People in Interest of J.E.B., 854 P.2d 1372, 1375-76 (Colo. App. 1993) (concluding that experts in a termination of parental rights case 
8 properly relied on “reports and information in the case which otherwise might have been objectionable hearsay”). ¶ 22 But facts or data that are otherwise inadmissible “shall not be disclosed to the [factfinder] by the proponent of the opinion or inference unless the court determines that their probative value . . . [in assessing] the expert’s opinion substantially outweighs their prejudicial effect. CRE 703. Thus, if admitted, the inadmissible facts or data are only admissible for evaluating the weight to be given the expert’s testimony and may not be considered as supporting the truth of the inadmissible evidence. B. Analysis ¶ 23 At the hearing, the caseworker provided the following testimony that mother contends was hearsay: • a worker at the hotel where mother lived had seen her with a person who went by the same name as father; • the parents continued a relationship because the caseworker spoke with law enforcement officers who responded to domestic violence incidents involving mother and father after the proceeding began; 
9 • mother’s therapist had concerns that mother was not honest about her ongoing relationship with father and could not give a recommendation about how much more time mother needed to become stable; and • hospital personnel were concerned that mother wanted the child to have a gastrostomy tube, which was an unnecessary procedure. ¶ 24 The court denied mother’s hearsay objections to this testimony, concluding that the statements were admissible to explain the caseworker’s actions and to support her opinion that mother did not comply with her treatment plan and that additional time to work on the treatment plan would be futile. See id. ¶ 25 On appeal, mother argues that the juvenile court erred because it relied on the hearsay testimony for the truth of the matter in its written judgment. We agree that the court found that mother “had contact with [father] as recently as two weeks prior to the hearing.” The only source of this information was the caseworker’s hearsay testimony and, as such, it was error for the court to rely on this hearsay statement to support the truth of the assertion. However, the record contains ample evidence 
10 independent of this hearsay to support the court’s finding that mother continued her unhealthy and dangerous relationship with father during this case. ¶ 26 Mother testified that she was not honest with the Department and denied having a relationship with father even when she was having contact. She admitted that she did not allow the caseworker to visit her hotel room earlier than a few weeks before the termination hearing because she was still having contact with father. Mother also admitted she needed an additional six months to comply with her treatment plan and become fit. And both the caseworker and mother testified that mother had filed motions in father’s criminal cases in an attempt to modify the no contact orders. ¶ 27 Mother also asserts that the juvenile court relied on the hearsay statements from her therapist for their truth, rather than as the basis of the caseworker’s opinion. When discussing whether mother had addressed the issues of domestic violence in the home, the court stated: When the caseworker finally spoke with [mother’s] therapist one week before the hearing, her therapist indicated she has not 
11 made sufficient progress — she does not have healthy coping skills and is still working on her goals to address her domestic violence related trauma, including setting healthy boundaries. ¶ 28 It is unclear whether the court relied on this statement to determine that the therapist’s statements were true, or if it was simply relaying the caseworker’s testimony. However, even if we were to assume the court erred, sufficient admissible evidence, including mother’s own testimony, supports the court’s determination that mother had not sufficiently addressed the issues of domestic violence with father. Accordingly, even if this part of the court’s judgment relied on hearsay evidence for its truth, any error was harmless. See R.J., ¶ 22. ¶ 29 Lastly, mother takes issue with hearsay testimony related to her behavior at the hospital when the case first started. But the court did not terminate mother’s parental rights because she did not understand the child’s medical needs. The court’s decision hinged on mother’s continuing relationship with father, and mother’s lack of meaningful progress with respect to the impact of domestic violence on her and the child, as well as her failure to address her mental health concerns. And, as mentioned, mother 
12 conceded she was not fit to care for the child at the time of the termination hearing and requested additional time. ¶ 30 Accordingly, the court did not err when it admitted the hearsay statements about mother’s behavior at the hospital because it did not consider those statements for their truth. ¶ 31 Based on the foregoing, even if the juvenile court did error by admitting some hearsay statements for the truth of the matter asserted, any error was harmless in light of the independent evidence that mother was unfit, could not be rendered fit within a reasonable time, and there was no less drastic alternative to termination given the child’s long term out of home placement and need for permanency. See § 19-1-902 (1.6), C.R.S. 2023 (“[I]t is appropriate to provide for an expedited placement procedure to ensure that children under the age of six years who have been removed from their homes are placed in permanent homes as expeditiously as possible.”). V. Disposition ¶ 32 We affirm the judgment. JUDGE FREYRE and JUDGE GRAHAM concur.