Damon H. CARTER *v.* ST. VINCENT INFIRMARY

CA 84-409 690 S.W.2d 741

Court of Appeals of Arkansas
Division II
Opinion delivered June 12, 1985

*Gill, Johnson, Gill & Gill*, by: *B. Kenneth Johnson*, for appellant.

*Friday, Eldredge & Clark*, by: *John Dewey Watson* and *Kevin A. Crass*, for appellee.

DONALD L. CORBIN, Judge. An action for damages resulting from alleged malpractice was initiated by appellant, Damon H. Carter, against appellee, St. Vincent Infirmary, in the Circuit Court of Lincoln County. A jury returned a verdict for appellee. We reverse and remand for a new trial.

In January of 1979, appellant entered St. Vincent Infirmary. He had surgery identified as a gastric resection on January 8, 1979. A second operation was performed on January 16, 1979, to correct an obstruction of the lower intestine. Following appellant's release from the hospital, he learned that he had an injury to his brachial plexus involving the long thoracic nerve resulting in a winged scapula with a loss of use to his right arm and shoulder. Both parties agree that appellant suffered an injury to his brachial plexus. Each party, however, alleges a different cause. Appellant contended at trial that the damage to his brachial plexus was caused by a stretch injury which he alleged occurred as a result of the negligence of two of appellee's orderlies. Appellant contended that he sustained the injury when the orderlies moved him from his hospital bed to a hospital gurney to take him to his second surgery. Appellee presented alternative evidence to illustrate that appellant's injury was not caused by an isolated stretch but was caused by a herpes simplex virus.

The issue on appeal is whether the trial court erred in

excluding the rebuttal testimony of Cathy Bradshaw, a registered nurse who had special training as an Infection Control Practitioner. We agree with appellant that this witness should have been allowed to testify in rebuttal, subject to exclusion on proper objection to those specific portions of her testimony which may have been inadmissible.

 Whether a witness may give expert testimony rests largely within the sound discretion of the trial court and will not be reversed unless an abuse of discretion is found. *Dildine* v. *Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984). As stated by the Court in *Dildine, supra*:

> Obviously no firm rule can be derived which would serve uniformly as a means of measuring qualifications of an expert, but the tone of our cases suggests that too rigid a standard should be avoided and if some reasonable basis exists from which it can be said the witness has knowledge of the subject beyond that of persons of ordinary knowledge, his evidence is admissible. (cites omitted)

The record reflects in the instant case that counsel for appellant questioned Cathy Bradshaw as to her opinion of whether a herpes simplex virus could cause permanent nerve damage. Counsel for appellee objected and was permitted to voir dire the witness regarding her qualifications. The court subsequently ruled that the witness was not qualified to give an answer to the above question. Upon further examination by counsel for appellant, Cathy Bradshaw was questioned regarding the reliance she would place upon the articles and treatises referred to by physicians who had previously testified on behalf of appellee. Counsel for appellee objected to the question arguing that the witness was not qualified to say what she would rely on as she was not a medical doctor. The witness was subsequently questioned outside the presence of the jury which testimony was tendered into the record as a proffer. The trial court subsequently ruled that the witness was not qualified to testify as to whether she would rely on those articles and treatises.

Appellant argues that Cathy Bradshaw's testimony was not offered to render an opinion on the ultimate issue or to provide a diagnostic opinion of the cause of appellant's injury. Her testi-

mony was offered for the limited purpose of demonstrating that the medical journals read into evidence by appellee's physician witnesses were outdated and not considered to be authoritative in the 1980's. Her testimony was further offered for the purpose of establishing that current medical evidence distinguishes the effects of different strains of the herpes virus. Her testimony would have shown that while herpes zoster may cause nerve damage, there were no documented medical cases where the herpes simplex virus had ever caused the type injury suffered by appellant.

At trial, the qualifications of Nurse Bradshaw were established as follows:

(1) she was currently the Infection Control Practitioner at Jefferson Regional Medical Center in Pine Bluff, and had held that position for three years;

(2) her job as Infection Control Practitioner was to research and maintain a knowledge of the most recent developments in the area of infections and infectious diseases;

(3) she was trained as an Infection Control Practitioner at the Center for Disease Control in Atlanta, Georgia, which is the national institution and authority on infections and infectious diseases. There she attended a 320 hour course on infection control including specific lectures and training in the field of herpetic viral infections. Since that course, she had attended fourteen seminars and conferences on updates in infection control.

(4) she regularly provides information to the doctors of Jefferson Regional Medical Center concerning the possible effects of herpetic viral infections, and regarding new developments in the infectious disease area.

(5) she also acts as a consultant to doctors and area hospitals in South Arkansas in the field of infection control.

(6) she has access to the National Library of Medicine Computer Data Bank and has been trained to accurately retrieve information from this source.

(7) In addition to her special training in infectious diseases, she had been a registered nurse for eleven years.

■ Clearly, Cathy Bradshaw had knowledge of herpetic viral infections beyond that of persons of ordinary knowledge. Appellee's expert witnesses testified that they would rely on the Head of Infection Control at St. Vincent Infirmary for information concerning viral infections.

■ Nurse Bradshaw's testimony should have been admissible for the limited purpose of demonstrating that the authorities relied upon by appellee were considered obsolete; for the purpose of providing the jury with the most updated information available on the new effects of the herpes simplex viral strain; and for the purpose of providing an expert opinion on whether or not a herpes simplex virus could cause permanent nerve damage. If allowed to testify, Ms. Bradshaw would have established that her communications with the Center for Disease Control and her search of the National Library of Medicine Computer Bank did not reveal any documented cases where a herpes simplex viral strain had caused permanent nerve damage.

A Texas Court of Appeals case is similar to the case at bar. In *Johnson v. Hermann Hospital*, 659 S.W.2d 124 (Tex. Civ. App. 1983), a fifteen-year old girl, after undergoing successful surgery to correct buck teeth, was transferred to Hermann Hospital's SICU II where she was breathing through an endotracheal tube. The nurses in SICU II were responsible for suctioning the tube with the use of special catheters to keep the airway open. Approximately two and one half hours following her transfer to SICU, Cheryl Johnson had a respiratory and cardiac arrest. She suffered permanent brain damage as a result of her brain being deprived of oxygen.

Appellants brought suit contending that the nurse charged with caring for Cheryl in SICU was inexperienced in critical care nursing and was responsible for more patients than she could care for properly and adequately. Additionally, appellants contended Cheryl's airway was not adequately suctioned, allowing secretions to gradually accumulate and thicken, cutting off the air flow in the endotracheal tube and causing Cheryl's cardiac and respiratory arrest. Appellees contended the nurse in charge of

Cheryl's care in SICU was qualified, was not over-burdened, and that the proper nurse-to-patient ratio for step down SICU was maintained. Appellees further contended that Cheryl's injuries were the result of a sudden and acute episode wherein the endotracheal tube suddenly kinked or suddenly became obstructed by the rapid accumulation of secretions within the tube.

At the trial, medical experts were called by each side. At the close of appellees' evidence, appellants sought to introduce portions of the deposition of Nurse Wanda Karcher in rebuttal. Appellees objected and appellants read portions of the deposition into the record outside of the presence of the jury. The court sustained appellees' objection.

Appellees asserted Karcher's testimony was inadmissible because she testified to facts about which she had no personal knowledge, and she was not qualified as an expert witness.

The opinion recited that Nurse Karcher was called as a rebuttal witness to testify as to the proper standards of care for patients by nurses in SICU's. Karcher's testimony revealed that she had had extensive experience in the care of patients using endotracheal tubes and in the proper method of suctioning those tubes.

The Texas Appeals Court reversed and remanded stating:

> Although Karcher was not an RN at the time she gave her testimony, she was qualified to testify because of her experience. Nonphysicians may qualify as medical experts by virtue of special experience. *Warren* v. *Hartnett*, 561 S.W.2d 860 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.).

The Texas court quoted from a previous decision which stated: "It is a fundamental rule that either party is entitled to introduce testimony to rebutt [sic] evidence introduced by his adversary." *Lumbermen's Lloyds* v. *Jones*, 264 S.W.2d 759, 761 (Tex.Civ.App.—Texarkana 1954) rev'd on other grounds 153 Tex. 379, 268 S.W.2d 909 (1954); *Southern Pacific Transportation Co.* v. *Peralez*, 546 S.W.2d 88 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). It was further noted by the Texas Court of Appeals that the testimony of Nurse Karcher was

offered in rebuttal. "Although some of her testimony may have been inadmissible in appellants' case in chief, testimony which is inadmissible in the first instance may become relevant and admissible in rebuttal."

■ In the case at bar it is clear that Nurse Bradshaw's testimony would not have been admissible in appellant's case in chief; however, it became relevant and admissible evidence on rebuttal which the jury was entitled to consider and weigh. Of course, the witness was not qualified to make a diagnosis of appellant's injury and the causation thereof.

■■ Appellees assert that part of Nurse Bradshaw's testimony concerning her making inquiries, by telephone and through a computer linkup regarding causation of permanent nerve damage, was clearly hearsay. However, it is well settled that an expert may base his opinion on facts learned from others despite their being hearsay. *Dixon* v. *Ledbetter*, 262 Ark. 758, 561 S.W.2d 294 (1978). In *Arkansas State Highway Commission* v. *Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985), we cited Ark. Unif. R. Evid. 703, which provides:

> Basis of opinion testimony by experts.—The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We noted that under this rule an expert must be allowed to disclose to the trier of fact the basis facts for his opinion, as otherwise the opinion is left unsupported in midair with little if any means for evaluating its correctness. The relative weakness or strength of the factual underpinning of the expert's opinion goes to the weight and credibility, rather than admissibility. *See, Polk* v. *Ford Motor Co.*, 529 F.2d 259 (8th Cir.), *cert. denied*, 426 U.S. 907 (1976).

In conclusion we hold that the trial court abused its discretion in refusing to qualify Nurse Bradshaw as an expert in her field. Her testimony reveals that she was sufficiently familiar by virtue of her training and experience in the area of infectious diseases. Furthermore, her testimony was offered in rebuttal and

not for the purpose of diagnosing appellant's injury or its cause.

Reversed and remanded.

COOPER and GLAZE, JJ., agree.