Barbara SIMS, Petitioner,

v.

The **INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, and Safeway Stores, Inc., Respondents.**

No. 88CA1821.

Colorado Court of Appeals,
Div. IV.

April 12, 1990.

Rehearing Denied May 31, 1990.

Certiorari Denied Sept. 24, 1990.

Norton Frickey & Associates of Colorado Springs, P.C., Leif Garrison, Colorado Springs, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Karen E. Leather, Asst. Atty. Gen., Denver, for respondent Indust. Claim Appeals Office of State of Colo.

Watson, Nathan & Bremer, P.C., Mark H. Dumm, Douglas A. Tabor, Denver, for respondent Safeway Stores, Inc.

Opinion by Judge DUBOFSKY.

Petitioner, Barbara Sims, seeks review of a final order of the Industrial Claim Appeals Office (Panel) that denied her claim for temporary disability and medical benefits.

On February 28, 1987, petitioner slipped and fell on stairs while working at a Safeway store. After the fall petitioner complained to the store manager of pain in her knee and later left work to seek emergency treatment at Memorial Hospital. At the hospital petitioner was treated by an emergency room physician who released her and told her she could return to work on March 3, 1987.

Petitioner later sought medical services from a physician she had seen on previous occasions, a Dr. Watts. Petitioner claims the emergency room physician referred her to Dr. Watts. Petitioner did not contact anyone at Safeway about her injury until March 14, 1987, and still has not returned to work.

Safeway referred petitioner to a physician assistant working under the direction of a licensed medical doctor. The physician assistant determined that petitioner was not injured or incapacitated when he examined her. He, in turn, referred petitioner to an orthopedic surgeon, who reached a similar conclusion. The physician assistant released petitioner to return to work, without restrictions, as of May 15, 1987.

Petitioner claims the fall caused injury and pain to her back and both her knees, and that she has had resulting headaches. The ALJ concluded that petitioner failed to sustain her burden of proof that she was sufficiently injured or incapacitated to be entitled to temporary total disability benefits. In denying benefits arising from the February 28, 1987, incident, the ALJ specifically found that there was no temporary disabling injury and that the subsequent medical treatment by the first doctor was unauthorized and non-compensable under § 8–51–101, C.R.S., et seq. (1986 Repl.Vol. 3B).

The Panel affirmed the ALJ's determination that petitioner had not met her burden of proof regarding entitlement to benefits for a temporary disabling injury. It also affirmed, on other grounds, the ALJ's determination that respondent was not financially responsible for Dr. Watts' treatment. We agree with the Panel.

I.

■ Petitioner argues that the Panel erred in accepting the testimony of the physician assistant because he is not a medical doctor. She argues that the Panel could not base its ruling on that testimony because the opinion of the physician assistant lacked the necessary foundation to be competent evidence. Furthermore, petitioner maintains that, because the physician assistant lacked a license to practice medicine, the Panel erred in permitting him to testify in terms of reasonable medical probability. We reject these contentions.

The pertinent statute, § 12–36–106(5)(a), C.R.S. (1985 Repl.Vol. 5), states:

"A person licensed under the laws of this state to practice medicine may delegate to a physician assistant certified by the board the authority to *perform acts which constitute the practice of medicine* to the extent and in the manner authorized by rules and regulations promulgated by the board, including the authority to prescribe, on a case-by-case and per-patient visit basis as approved by the supervising physician, and dispense only such drugs as designated by the board. *Such acts shall be consistent with sound medical practice.*" (emphasis added)

An expert is a person who is possessed of greater knowledge, skill and information than the fact finder would normally possess. Also, the fact finder here has wide discretion in determining whether the requirements to qualify a witness are met. *See Connell v. Sun Exploration and Production Co.*, 655 P.2d 426 (Colo.App.1982).

The physician assistant here had two years training in his position and had an additional residency in emergency medicine. He had practiced for approximately ten years as a physician assistant. Thus, the record supports the Panel's conclusion that the requisite foundational basis was demonstrated. *See Carter v. St. Vincent Infirmary,* 15 Ark.App. 169, 690 S.W.2d 741 (1985) (error to exclude nurse's testimony concerning subject matter within her expertise and special training); *Kosberg v. Washington Hospital Center, Inc.,* 394 F.2d 947 (D.C.Cir.1968) (intern could testify regarding effect of electroshock therapy though not a psychiatrist or neurologist); *Commonwealth v. Morris,* 205 Pa.Super. 105, 207 A.2d 921 (1965) (admission of testimony of unlicensed intern as to cause of death was not error).

We further conclude it is proper to frame the opinion questions in terms of medical probability since a physician assistant is trained in a medical science approach to analyzing and treating disease.

## II.

■■ Petitioner next argues that there was insufficient evidence to support the Panel's order that petitioner had not sustained a compensable injury. We disagree.

In addition to the testimony of the physician assistant, the Panel relied on other evidence including the testimony of a witness to the fall and from the store manager. Both testified that petitioner did not appear in physical distress after the injury.

The Panel also relied on the emergency room physician's release slip which stated petitioner could return to work on March 3, 1987. Moreover, the report of the orthopedic surgeon indicated there was no evidence of neck, back, or knee pathology.

Here, the Panel implicitly rejected petitioner's testimony, and we will not disturb its determination regarding the credibility of the witness. *Levy v. Everson Plumbing Co.,* 171 Colo. 468, 468 P.2d 34 (1970). Furthermore, if, as here, there is conflicting evidence, the Panel must resolve it, and that resolution is conclusive on review.

*Eisnach v. Industrial Commission,* 633 P.2d 502 (Colo.App.1981).

## III.

Petitioner argues that it was error to deny payment of her medical bills for treatment rendered by Dr. Watts. We disagree.

■■ Under § 8–51–110(5)(a), C.R.S. (1986 Repl.Vol. 3B), an employer has the right to select the treating physician in the first instance. *Granite Construction Co. v. Leonard,* 40 Colo.App. 20, 568 P.2d 500 (1977). An injured employee may thereafter change physicians or employ additional physicians if notice is given to his employer or its insurer and there is consent of the Division of Labor. *Pickett v. Colorado State Hospital,* 32 Colo.App. 282, 513 P.2d 228 (1973). Also, when medical treatment results from a referral by an authorized treating physician, such treatment is considered part of the normal progression of authorized treatment and the express consent of the employer or the Industrial Commission is not required. *Greager v. Industrial Commission,* 701 P.2d 168 (Colo.App. 1985).

Petitioner argues the emergency room physician is not a physician within the meaning of § 8–51–110(5)(a) because he performs only the function of a preliminary examiner in an emergency situation, and therefore, Dr. Watts was the physician of her own selection under the statute. Petitioner further argues that because respondent failed to provide or direct medical treatment when the injury occurred, she was authorized to select Dr. Watts as the treating physician.

Section 8–51–110(5)(a) states in relevant part:

"In all cases of injury, the employer or insurer has the right in the first instance to select the physician who attends said injured employee. If the services of a physician are *not tendered* at the time of injury, the employee shall have the right to select his own physician or chiropractor." (emphasis added)

The Panel concluded that § 8–51–110(5)(a) included emergency physi-

cians and since the emergency room physician was petitioner's selected physician, she was precluded from choosing the second physician, Dr. Watts. The Panel determined the emergency room physician was the authorized treating physician and because there was no referral, the treatment by Dr. Watts was unauthorized and, therefore, not compensable. We agree with claimant's contention that an emergency physician is not included within the ambit of § 8–51–110(5)(a) but for other reasons affirm the Panel's decision to deny payment to Dr. Watts.

The majority rule is that an emergency creates an exception to the employer's statutory right of first selection of a treating physician and to claimant's duty to give notice of the injury to the employer before selecting his own physician. *Universal Underwriters Insurance Co. v. Bussey,* 17 Ark.App. 47, 703 S.W.2d 459 (1986); *Schofield v. Great Atlantic & Pacific Tea Co., Inc.,* 299 N.C. 582, 264 S.E.2d 56 (1980); 2 A. Larson, *Workmen's Compensation Law* § 61.12(f) (1989).

We thus determine that, in an emergency situation, an employee need not give notice to the employer nor await the employer's choice of a physician before seeking medical attention. A medical emergency allows an injured party the right to obtain treatment without undergoing the delay inherent in notifying the employer and obtaining his referral or approval. Moreover, since the employer will often not have a specific emergency physician immediately ready to treat the claimant, this approach preserves the employer's statutory right to select the first non-emergency physician.

Once the emergency has ended, the employee must give notice to the employer of the need for continuing medical service and the employer then has the right to select a physician. *See Payne v. Master Roofing & Siding Inc.,* 1 Va.App. 413, 339 S.E.2d 559 (1986); *Richmond State Hospital v. Waldren,* 446 N.E.2d 1333 (Ind.App.1983); *West v. High Path Stock Farm,* 71 A.D.2d 769, 419 N.Y.S.2d 306 (1979); 2 A. Larson, *Workmen's Compensation Law* § 61.12(f) (1989).

Here, the employer knew of the injury and was aware of the employee's decision to leave work and seek emergency treatment. When the claimant left work she went directly to a hospital's emergency room and received treatment. If we assume, *arguendo,* that this was a legitimate injury which necessitated the use of an emergency room physician, then the emergency room physician comes under the above-stated rule and is excluded from § 8–51–110(5)(a). However, the employer's acquiescence in petitioner's emergency room visit does not constitute a waiver or abrogation of the employer's right to choose a subsequent treating physician. *See Jasper Community Hospital, Inc. v. Hyde,* 419 So.2d 594 (Ala.Civ.App.1982).

Petitioner was released by the emergency room physician to return to work in three days. Thus, after the emergency had passed, petitioner was required to notify her employer and give it a reasonable opportunity to furnish any subsequent medical services that were needed. *See Jasper Community Hospital v. Hyde, supra.*

Here, petitioner did not so inform the employer. Thus, the treatment by Dr. Watts was without approval or acquiescence by the employer as required by § 8–51–110(5)(a) and is, therefore, not compensable.

### IV.

Since the Panel did not make a determination whether the emergency room expenses were compensable, the matter must be remanded for a determination in compliance with this opinion. *See Friedrichs v. Midland Savings & Loan Co.,* 94 Colo. 563, 31 P.2d 493 (1934).

The order is affirmed, and the cause is remanded for determination as to the compensability of the emergency room expenses.

TURSI and DAVIDSON, JJ., concur.