MASON JAR RESTAURANT
and Casualty Reciprocal
Exchange, Petitioners,

v.

The INDUSTRIAL CLAIM APPEALS
OFFICE OF the STATE OF COLORA-
DO and Brigette Sampson–Czoski, Re-
spondents.

No. 92CA1110.

Colorado Court of Appeals,
Div. A.

Sept. 9, 1993.

Rehearing Denied Oct. 14, 1993.

Halaby, McCrea & Cross, Lynda Simpson Newbold, Denver, for petitioners.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. General, Maurice G. Knaizer, Deputy Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Cucullu & Pring, Cynthia M. Pring, Colorado Springs, for respondent Brigette Sampson–Czoski.

Opinion by Chief Judge STERNBERG.

In this workers' compensation case, Mason Jar Restaurant and Casualty Reciprocal Exchange (petitioners) contest a final order of the Industrial Claim Appeals Panel determining medical benefits for Brigette Sampson–Czoski (claimant). We affirm.

This case addresses the authority of an Administrative Law Judge (ALJ) independently to adjudicate medical benefits when the employer or its insurer has obtained a retroactive denial of earlier medical benefits from the same provider in a medical utilization review (M–U–R) proceeding.

The claimant suffered an admitted compensable injury to her cervical-thoracic spine in 1987. Claimant was treated by an osteopath, who became her authorized treating physician. In March 1990, claimant requested an administrative hearing to determine her entitlement to disability and medical benefits. While the claimant's request for hearing was pending, the petitioners initiated an M–U–R proceeding pursuant to the statute now codified at § 8–43–501, C.R.S. (1993 Cum.Supp.), to determine the medical necessity and appropriateness of the osteopath's treatment.

During the pendency of the M–U–R proceeding, the claimant had a cervical laminectomy with fusion at the C5–C6 level. The surgery was performed by a neurosurgeon to whom the osteopath had referred the claimant.

On October 9, 1991, the Director of the Division of Labor (Director) entered an order in the M–U–R proceeding. The order found that, as of September 11, 1989, the osteopath's treatment of the claimant was no longer reasonably necessary and appropriate and ordered that a change of health care provider be made. Additionally, the Director denied payment for the osteopath's treatment retroactively to that date. The M–U–R order is not at issue in this appeal.

Thereafter, on November 15, 1991, the previously requested benefits hearing was held before an ALJ in the claim proceeding. The petitioners moved to vacate the hearing on grounds that their liability for claim-

ant's medical benefits, both past and future, had been conclusively decided in the M–U–R proceeding. Petitioners argued that the M–U–R order retroactively denying payment to the osteopath effectively "de-authorized" that provider, such that any referrals made by the osteopath to other medical providers after September 11, 1989, were not "authorized." In addition, they argued that because the M–U–R order had concluded that the osteopath's treatment after September 11, 1989, was not reasonably necessary or appropriate, any referrals made by the osteopath to other medical providers after that date were, likewise, not reasonably necessary or appropriate and compensation for those services should be retroactively denied as well.

The ALJ rejected the petitioners' arguments and entered an order providing for the claimant's past and ongoing medical care, but not including the osteopath's treatment during the period expressly included in the Director's order in the M–U–R proceeding. The Panel affirmed the ALJ's order and this appeal followed.

### I.

Initially, we address whether the ALJ exceeded his authority in adjudicating the petitioners' liability for treatment provided by health care providers other than the osteopath during the period encompassed by the M–U–R proceedings. We conclude that the ALJ acted within his authority.

 The petitioners denied liability for procedures or treatment delivered by any health care providers after September 11, 1989. The ALJ concluded that, under the procedural posture of this case, he had no authority to overrule the Director's prior M–U–R order. However, based on his general authority to "hear and decide all matters" arising under the Workers' Compensation Act, § 8–43–201, C.R.S. (1993 Cum. Supp.), the ALJ concluded that he was authorized to rule on matters not decided under the M–U–R order, including, specifically, the petitioners' liability for treatment provided by health care providers other than the osteopath.

Although the petitioners do not articulate a legal theory in support of their argument, they contend essentially that the M–U–R order should be given preclusive effect on the issue of claimant's prior and ongoing medical treatment. We do not agree.

 The doctrines of *res judicata* and collateral estoppel cannot be applied unless the party against whom estoppel is sought had a full and fair opportunity in which to litigate a matter in a prior proceeding. *Montoya v. City of Colorado Springs*, 770 P.2d 1358 (Colo.App.1989). The M–U–R statute, § 8–43–501, C.R.S. (1993 Cum. Supp.), establishes a "review" proceeding based solely on medical records; thus, the parties do not have a full and fair opportunity in which to litigate the necessity, reasonableness, or appropriateness of the disputed medical care. Consequently, an M–U–R proceeding does not result in a binding adjudicatory decision and cannot provide the basis for application of *res judicata* or collateral estoppel in subsequent proceedings between the parties. *See Williams v. Industrial Claim Appeals Office*, 862 P.2d 1007 (Colo.App.1993); *Hargett v. Director, Division of Labor*, 854 P.2d 1316 (Colo.App.1992).

We conclude that the M–U–R ruling did not preclude the claimant from seeking redress under § 8–43–201 and that the ALJ was within his authority in adjudicating her entitlement to past and ongoing medical benefits.

### II.

Petitioners next argue that the Director's M–U–R order denying the osteopath's fees retroactively to September 11, 1989, was tantamount to a "de-authorization" of that provider from that date forward. Consequently, petitioners argue, the osteopath's referrals to other health care providers after September 11, 1989, were not authorized, and they should not be held liable for any of claimant's treatment by other health care providers beyond that date. Again, we do not agree.

■ "Authorization," as that term is used in workers' compensation proceedings, refers to a physician's status as the health care provider legally authorized to treat an injured worker. *See* § 8–43–404(5)(a), C.R.S. (1993 Cum.Supp.). When the authorized treating physician refers a claimant to another health care provider, the treatment rendered by the referred provider is compensable as part of the legal chain of authorization. *Greager v. Industrial Commission*, 701 P.2d 168 (Colo.App. 1985).

■ The M–U–R statute, § 8–43–501, establishes a mechanism to review the *necessity* and *appropriateness* of medical care, but the statute does not provide, expressly or impliedly, that the health care provider who is the subject of an M–U–R proceeding is retroactively "de-authorized" with the result that any referrals made by the provider are retroactively invalidated. In our view, the statute focuses on the care, not on the health care provider. Thus, we decline to read such terms and concepts into the statute relating to the health care provider. *See Kraus v. Artcraft Sign Co.*, 710 P.2d 480 (Colo.1985).

We agree with the reasoning of the ALJ and adopt his analysis as our own:

> It is ... logical that a utilization review ... must be conducted against each referred provider to determine medical necessity and reasonableness of each referred provider's care individually. Allowing a blanket de-authorization and retroactive denial of payment to all referred providers would effectively deny referred providers even the minimal degree of due process rights existing in the utilization review process. A contrary conclusion would mean no provider could ever rely on payment for services, as utilization reviews can be initiated at any time, retroactive to any date. Such referred providers do not have notice of a utilization review being conducted against the referring physician, are not allowed any input into the utilization review and consequently should not be denied their fees for treatment except and unless their treatment is the specific subject of a utilization review proceeding.

At the benefits hearing before the ALJ, the petitioners agreed to reserve for future determination the factual issue of whether the treatment provided by the referred providers was reasonably necessary, appropriate, and compensable. That issue is not before us on this appeal.

However, we reject the petitioners' argument that payment to the referred providers can be denied retroactively as a matter of law. The M–U–R order had no effect on the osteopath's status as claimant's authorized treating physician prior to the effective date of the M–U–R order on October 9, 1991, and therefore, any referrals made by that provider prior to that date were properly authorized.

### III.

Petitioners next argue that the ALJ and Panel erred in determining that it was permissible for the claimant's new authorized treating physician to refer her back to the osteopath for treatment. We find no error.

Subsequent to the M–U–R order in October 1991, the parties stipulated that the neurosurgeon would become the claimant's authorized treating physician. Thereafter, the neurosurgeon referred the claimant back to the osteopath for additional treatment.

Petitioners argue that once a treating physician has been removed from a case in an M–U–R proceeding, that provider is *permanently* precluded from treating the claimant for the duration of his or her claim. We do not agree.

■ Under the version of § 8–43–501 applicable here, when it is determined in an M–U–R proceeding that treatment rendered by an authorized physician was 1) unrelated to a compensable injury, 2) not reasonably necessary, or 3) not reasonably appropriate according to accepted professional standards, the M–U–R committee is authorized to "remedy" the problem by recommending (1) a change of authorized physician and (2) a retroactive denial of payment to the physician. *See* Colo.Sess.Laws 1991, ch. 225, § 8–43–501(3)(c) at 1356.

The statute does not authorize a permanent ban on treatment from the reviewed physician, and we decline to infer such a prohibition. *See Kraus v. Artcraft Sign Co., supra.* Had the General Assembly intended to authorize such a ban, irrespective of changes in the claimant's medical condition and diagnosis, or other relevant circumstances, it could have done so.

We note that the M–U–R proceedings in this case reviewed the osteopath's treatment over a fixed period of time *prior* to claimant's cervical laminectomy and fusion in July 1991. In contrast, in the subsequent claim hearing, the ALJ had before him the claimant's most recent treatment records, including the reports from her spinal surgery and post-surgical therapy and recovery.

As observed by the ALJ, the permanent ban urged by the petitioners could result in hardship in rural areas of the state where the number of health care providers is already limited. Moreover, such a ban would nullify the claimant's right under § 8–43–404(5)(a), C.R.S. (1993 Cum.Supp.) to request a change in authorized treating provider at any time.

■ For the aforementioned reasons, we decline to infer the implied prohibition urged by the petitioners. We must presume that the entire statutory scheme is intended to be effective, *Eckhardt v. Village Inn,* 826 P.2d 855 (Colo.1992), and we must endeavor to give a consistent, harmonious, and sensible effect to all its parts. *Allee v. Contractors, Inc.,* 783 P.2d 273 (Colo.1989). Applying these maxims, we hold that utilization review under § 8–43–501 does not abrogate the claimant's right under § 8–43–404(5)(a) to seek a change of physician, nor does it abrogate the ALJ's statutory authority under § 8–43–201 to adjudicate disputes regarding the claimant's *prospective* medical care.

Under our construction, § 8–43–501 remains a viable mechanism for reviewing and adjusting medical benefits retroactively. Whether an M–U–R order retains judgmental force prospectively will depend on whether an affected party seeks, and obtains, collateral relief under other provisions of the Workers' Compensation Act.

We do not agree that a contrary holding is required by the affidavit of a state representative which the petitioners sought to introduce in evidence. The post-enactment recollections of a legislator do not constitute legislative history and are not admissible to establish legislative intent. *Colorado Department of Social Services v. Board of County Commissioners,* 697 P.2d 1 (Colo.1985).

IV.

Finally, petitioners contest the determination of the ALJ and Panel that the osteopath could provide emergency treatment to the claimant during the interval between the effective date of the Director's M–U–R order and the selection of a replacement physician. We perceive no error.

■ The M–U–R statute makes no provision for necessary interim medical care. We have ruled, however, that, in an emergency situation, a claimant need not give notice to an employer or await the employer's choice of a physician before seeking medical attention. *Sims v. Industrial Claim Appeals Office,* 797 P.2d 777 (Colo. App.1990). Since § 8–43–501 makes no provision for interim medical care, the ALJ properly resorted to the principles set forth in *Sims* in holding that any emergency treatment rendered by the osteopath during the interim period was fully compensable.

Since there may be outstanding issues of compensability remaining, the matter must be remanded for further proceedings in compliance with this opinion. *See Sims v. Industrial Claim Appeals Office, supra.*

We have considered the petitioners' other arguments and find them to be without merit.

The order is affirmed, and the cause is remanded for determination of any remaining issues of compensability.

NEY and BRIGGS, JJ., concur.