**Brian R. POPKE, Petitioner,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO, Drywall Service of Durango, and Colorado Compensation Insurance Authority, Respondents.**

No. 96CA1782.

Colorado Court of Appeals, Div. I.

Aug. 14, 1997.

Dawes & Harriss, P.C., Robert C. Dawes, Durango, for Petitioner.

Colorado Compensation Insurance Authority, Laurie A. Schoder, Brandee DeFalco-Galvin, Denver, for Respondents.

Opinion by Judge MARQUEZ.

Brian R. Popke (claimant) seeks review of a final order of the Industrial Claim Appeals Panel (Panel) denying his claim for temporary total disability (TTD) benefits after November 5, 1995. We vacate the order and remand the cause for further proceedings.

Claimant sustained a neck injury on July 5, 1995, while working for Drywall Service of Durango (employer). The Colorado Compensation Insurance Authority (CCIA) admitted liability and began paying TTD benefits.

Claimant was treated by a group of several physicians at La Plata Family Medicine Association, P.C., and by a chiropractor. On October 20, 1995, the physicians renewed a referral to the chiropractor, who treated claimant five times between that date and November 27, 1995. In a supplemental report dated December 14, 1995, the chiropractor indicated that claimant was capable of returning to regular employment on November 6, 1995.

Relying on the December 14 report, the CCIA filed a general admission of liability dated December 21, 1995, terminating TTD benefits effective November 5, 1995. Claimant objected, arguing that the chiropractor's release was not effective because the chiropractor was not his "primary" treating physician, and because the release was not given to or discussed with him at the time it was issued. The Administrative Law Judge (ALJ) rejected these arguments and held that claimant was not entitled to TTD benefits after the date the chiropractor released him to return to regular employment. The Panel affirmed.

I.

Claimant contends that the chiropractor, who had provided a limited course of treatment and was no longer treating him, was not an "attending physician," and therefore, the release cannot constitute a basis for termination of his TTD benefits under § 8–42–105(3)(c), C.R.S. (1996 Cum.Supp.). We conclude that further findings are necessary.

TTD benefits continue until, *inter alia*, "the attending physician gives the employee a written release to return to regular employment." Section 8–42–105(3)(c). Unless the record contains conflicting opinions from multiple attending physicians regarding a claimant's release to work, the ALJ is not at liberty to disregard the attending physician's opinion that a claimant is released to return to employment. *Burns v. Robinson Dairy, Inc.*, 911 P.2d 661 (Colo.App.1995).

The General Assembly has used the two terms, "attending physician" and "authorized treating physician," in different portions of the Act. *See* §§ 8–42–105(2), 8–42–105(3), and 8–42–106(2), C.R.S. (1996 Cum.Supp.) (attending physician); §§ 8–42–101(1)(b), 8–42–101(3.6)(b), 8–42–107(8)(b)(I), 8–43–404, 8–43–501(3)(e), and 8–43–502(2), C.R.S. (1996 Cum.Supp.) (authorized treating physician). And, while the term "authorized treating physician" has been defined, *see Mason Jar Restaurant v. Industrial Claim Appeals Office*, 862 P.2d 1026 (Colo.App.1993) (authorization refers to physician's status as a health care provider legally authorized to treat an injured worker and another health care provider to whom the worker is referred by the

authorized treating physician), the term "attending physician" has not.

Moreover, the General Assembly has used the two terms in different contexts. *Compare* § 8–42–107(8)(b), C.R.S. (1996 Cum. Supp.) (authorized treating physician determines maximum medical improvement) *with* § 8–42–105(3)(c), C.R.S. (1996 Cum.Supp.) (attending physician provides release to work).

By administrative rule, upon certain conditions, an insurance carrier may terminate TTD benefits without a hearing by filing an admission of liability form with a medical report from "the authorized treating physician who has provided the primary care" stating the claimant is able to return to regular employment. Department of Labor & Employment Rule IX(C)(1)(b), 7 Code Colo. Reg. 1101–3.

■ The director of the division of workers' compensation may promulgate the rules and regulations governing administration of the Workers' Compensation Act (Act). Section 8–47–107, C.R.S. (1996 Cum.Supp.). And, as a general rule, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency. *See Wine & Spirits Wholesalers of Colorado, Inc. v. Colorado Department of Revenue,* 919 P.2d 894 (Colo.App.1996). Nevertheless, while the director's interpretation of § 8–42–105(3)(c) is entitled to deference, we are not bound by that interpretation if it is inconsistent with the clear language of the statute or with legislative intent. *See Douglas County Board of Equalization v. Clarke,* 921 P.2d 717 (Colo.1996); *El Paso County Board of Equalization v. Craddock,* 850 P.2d 702 (Colo.1993).

■ When construing statutes, a court must determine and give effect to the intent of the General Assembly. *M.S. v. People,* 812 P.2d 632 (Colo.1991). A statute is to be construed as a whole to give a consistent, harmonious, and sensible effect to all it parts. *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986). In enacting a statute, the General Assembly is presumed to have intended a just and reasonable result. Section 2–4–201, C.R.S. (1980 Repl.Vol. 1B).

■ If clear and unambiguous, the language of a statute must be given its plain and ordinary meaning. *See Ackerman v. Hilton's Mechanical Men, Inc.,* 914 P.2d 524 (Colo.App.1996).

■ The term "attending physician" can be defined as a physician who takes care of a claimant. *See Random House Webster's College Dictionary* 88 (1st ed. 1991) ("attending" means "to take care of; minister to: a nurse attending a patient"). However, because a statute must be construed as a whole, we conclude that the term "attending physician" as used in § 8–42–105(3)(c) includes only those physicians who are authorized to provide treatment. Under the statutory scheme, a claimant is entitled to benefits only if treated by certain authorized physicians. *See* § 8–43–404(5)(a) (1996 Cum.Supp.). Thus, an "attending physician" must be one within the chain of authorization. *See Mason Jar Restaurant v. Industrial Claim Appeals Office, supra.*

In certain respects the terms "attending physician" and "authorized treating physician" are interchangeable. This view is supported by § 8–43–404(5)(a), C.R.S. (1996 Cum.Supp.), which provides that the employer or insurer has the right in the first instance to select "the physician who *attends*" the injured employee. It also provides that, upon written request, the employee may procure written permission to have a "personal physician or chiropractor *attend*" the injured employee and further, upon proper showing "a physician of the employer's selection [may] *attend*" the employee. (emphasis added) Other provisions of § 8–43–404, C.R.S. (1996 Cum.Supp.) refer to an "authorized treating physician." *See* §§ 8–43–404(7) and 8–43–404(8), C.R.S. (1996 Cum.Supp.).

■ At the same time, there can be more than one attending physician. *See Burns v. Robinson Dairy, Inc., supra; Mason Jar Restaurant v. Industrial Claim Appeals Office, supra.* However, we do not construe § 8–42–105(3)(c) to include all attending physicians. We note that § 8–42–105(3)(c) specifically provides for continuation of TTD

benefits until "*the* attending physician" gives a written release. (emphasis added) Conversely stated, the statute does not provide for a release by "any attending physician." Consequently, the author of an effective release for return to employment must be the health care provider identified as "the attending physician."

 Further, to the extent a physician's status as the attending physician is disputed, resolution of this question is one of fact for the ALJ. Here, there is no dispute that the physicians at La Plata Family Medicine first treated claimant and that treatment was provided by the chiropractor only upon referral and only over a five-week period. However, there is little in the record to indicate that the chiropractor became "the attending physician" or that the release was approved by La Plata Family Medicine.

Finally, we do not read *Burns v. Robinson Dairy, Inc., supra*, as precluding this result. There is no indication in that case that the identity of the attending physician was in dispute.

 The contentions raised by claimant are that the chiropractor was not "the attending physician," or was not such at the time she completed the report, and that the ALJ failed to make a determination as to who was "the attending physician." The record supports claimant's assertions that these issues were not resolved. Thus, the cause must be remanded to determine who was the attending physician, whether the release was approved by the attending physician, and, if so, the date of such approval.

## II.

 Inasmuch as the question whether the release was ineffective because it was not provided in writing to claimant may be an issue on remand, we address it here. We conclude that such release must be delivered to the claimant to be effective.

As noted above, here, TTD benefits continue until the attending physician "gives the employee a written release." Section 8–42–105(3)(c).

 In determining the meaning of § 8–42–105(3)(c), we must strive to give the statute the effect intended by the General Assembly. *See Monfort, Inc. v. Gonzalez*, 855 P.2d 19 (Colo.App.1993). That requires an examination of the language of the statute, and in so doing, we must give the words their commonly understood meanings. *Ackerman v. Hilton's Mechanical Men, Inc., supra.*

The determinative phrase in § 8–42–105(3)(c) is "gives the employee." The word "gives" has several meanings. It means not only a physical conveyance, but also to bestow, grant, offer, attribute, or ascribe. *Random House Webster's College Dictionary* 565 (1st ed. 1991).

In the context of § 8–42–105(3)(c), it is unclear whether the word "gives" means a physical conveyance, or whether it connotes the act of "ascribing" to the claimant the ability to perform regular employment. Therefore, we must consider the statute in relation to the other provisions of § 8–42–105, to achieve a consistent, harmonious, and sensible effect to all of its parts. *See Snyder Oil Co. v. Embree*, 862 P.2d 259 (Colo.1993).

Read in its entirety, § 8–42–105(3) reflects the legislative intent to reduce litigation by delineating four specific events which terminate the claimant's right to TTD benefits. Sections 8–42–105(3)(b) and (d), C.R.S. (1996 Cum.Supp.) focus on proof that the claimant has actually returned to employment, whereas §§ 8–42–105(3)(a) and (c), C.R.S. (1996 Cum.Supp.) focus on the claimant's physical condition, regardless of whether the claimant has actually returned to employment. Section 8–42–105(3)(c) allows the termination of TTD benefits when the attending physician believes the claimant is physically capable of performing regular employment.

Thus, the dispositive question regarding § 8–42–105(3)(c) is whether it means only that the attending physician has issued a written opinion that the claimant is physically capable of performing regular employment, or whether it requires that that opinion be delivered to the claimant.

Claimant asserts that his rights to due process were violated by termination of his benefits based on information of which he

had no knowledge and that he was prevented from knowing that he needed to find employment. He also claims a violation of § 8–43–404(2), C.R.S. (1996 Cum.Supp.), which provides that an employee "shall also be entitled to receive reports from any physician" at the same time the reports are furnished to the employer, and a violation of Department of Labor & Employment Rule XI B(2), 7 Code Colo. Reg. 1101–3, which requires that medical reports must be exchanged by all parties within fifteen days of receipt. Claimant essentially asserts that the purpose of § 8–42–105(3)(c) is to notify the claimant that he or she should return to work or suffer loss of income. In essence, we agree with this analysis and conclude that the release must be delivered to the claimant.

In resolving the issue of notice, the Panel rejected the proposition that § 8–42–105(3)(c) requires proof that the attending physician has delivered a written release to claimant. In doing so, the Panel relied on § 8–42–105(3)(d), which provides that where the insurer seeks to terminate benefits based upon an offer of modified employment, it must not only prove that the attending physician "gives the employee a written release to return to modified employment," but also that "such employment is offered to the employee in writing." Thus, this provision explicitly requires proof that the injured employee has received the written offer of modified employment from the employer.

However, that statute is not conclusive since it can be read as establishing a three step procedure: (1) the physician giving the employee a release to modified employment, (2) the employer offering employment to the employee in writing, and (3) the employee failing to begin employment.

The Panel also relied on one of its own prior decisions. However, that authority is not binding on this court. Further, that decision basically relies on the wording of § 8–42–105(3)(d) above.

Although the Panel reasoned that if the General Assembly had intended to require proof that the attending physician had actually delivered the written release to the claimant it could have adopted language similar to that in § 8–42–105(3)(d), the converse

is also true. Rather than stating "gives the employee a written release," the General Assembly could have stated "when the attending physician issues a written opinion," which is the Panel's interpretation.

Accordingly, consistent with the purpose of the statute to place the claimant on notice that he must return to employment, contest the release, or suffer a loss of benefits, we conclude that the terms of the statute at issue here must be interpreted to require that for an attending physician's written release to be effective for the purpose of terminating TTD benefits, the release must be delivered to the employee.

Our construction is consistent with the claimant's right to timely notice of a physician's written release. The procedure for effecting a termination of TTD benefits is set forth in Department of Labor & Employment Rule IX(C)(1)(b). The insurer is required to mail a copy of the admission and attached medical report both to the claimant and the claimant's attorney. Department of Labor & Employment Rule XI(B), 7 Code Colo. Reg. 1101–3 (whenever a document is filed with the division, a copy shall be mailed to each party and the attorney).

Here, the record reveals that the CCIA filed a general admission of liability and attached the December 14 release from the chiropractor. The admission is dated December 21, 1995, and bears a certificate of service indicating that the admission and attached release were mailed to claimant and claimant's attorney on that date. Claimant testified that he received a letter from the CCIA, and at that time became aware of the release. There was no testimony as to the date he received the letter, however.

Arguably, the chiropractor did not comply with § 8–43–404(2), C.R.S. (1996 Cum.Supp.), which requires that when a chiropractor makes a report to the insurer, a copy shall be furnished to the claimant "at the same time it is furnished to" the insurer. There is no evidence in the record as to when, or if, the chiropractor furnished the report to claimant. However, even if the chiropractor did not comply with this section, since the CCIA mailed the December 14 report to claimant

on December 21, one week later, we perceive no prejudice to claimant. *See* § 8–43–310, C.R.S. (1996 Cum.Supp.) (harmless error is disregarded).

Nevertheless, because § 8–42–105(3)(c) provides that TTD benefits shall continue until the attending physician gives the employee a written release to return to regular employment, the earliest date TTD benefits could have been terminated here was the date the report was mailed to claimant. *See Campbell v. IBM Corp.*, 867 P.2d 77 (Colo. App.1993)(there is a rebuttable presumption that letter which was properly addressed, stamped, and mailed was duly delivered to addressee).

The order of the Panel is vacated and the cause is remanded for a determination of who was the attending physician at the time of the purported release and whether the release was approved by the attending physician, with termination of TTD benefits to be ordered only as of the date the report was mailed to claimant.

METZGER and CRISWELL, JJ., concur.