94 P.3d 1173 (2003)
Enrique LOBATO, Petitioner,
v.
INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado and Western Forge, Respondents.
No. 02CA1145.
Colorado Court of Appeals, Div. II.
June 5, 2003.
Rehearing Denied July 24, 2003.
Certiorari Granted August 2, 2004.
Steven R. Waldmann, Colorado Springs, Colorado, for Petitioner.
No Appearance for Respondent Industrial Claim Appeals Office.
*1174 Dworkin, Chambers & Williams, P.C., David J. Dworkin, Margaret Bauder Garcia, Denver, Colorado, for Respondent, Western Forge.
Brandee Defalco Galvin, Denver, Colorado, for Amicus Curiae Pinnacol Assurance.
Opinion by Judge NEY.
The sole issue in this workers' compensation case against Western Forge (employer) concerns the time frame during which Enrique Lobato (claimant) was required to request a division-sponsored independent medical examination (DIME) under the 1999 amendments to § 8-42-107.2, C.R.S.2002. We conclude that claimant's request for a DIME was untimely and therefore affirm the final order of the Industrial Claim Appeals Office (Panel) striking the DIME report and denying medical impairment benefits based on the DIME physician's rating.
A year after claimant's 1992 compensable injury, a treating physician placed claimant at maximum medical improvement (MMI) and assigned a zero percent rating for permanent impairment. Employer filed a final admission of liability (FAL) in 1994, which admitted liability for zero percent permanent partial disability (PPD) benefits. Claimant timely objected on grounds that he was not at MMI and was entitled to benefits for permanent medical impairment.
No further action was taken until 1995, when claimant sought an award of future medical benefits and alleged a new injury resulting from the aggravation of the 1992 injury. In an order mailed November 4, 2000, the administrative law judge (ALJ) found that claimant failed to prove a new injury and denied the request for future medical treatment of the 1992 injury. That order was not appealed.
Less than thirty days after the order, on November 30, 2000, claimant requested a DIME by filing a notice and proposal to select a DIME physician. The DIME was performed in February 2001, and the DIME physician assigned a fifteen percent whole person impairment rating.
Relying on § 8-42-107.2, employer asserted that claimant's notice and proposal to select a DIME was untimely filed. The ALJ agreed and therefore granted employer's motion to strike the DIME report and denied claimant's request for PPD benefits based on the DIME physician's rating. The Panel affirmed, with one Panel member specially concurring.
Claimant contends that his DIME request was timely because he had no notice of any time limit within which he had to request a DIME. We disagree, though for reasons other than those relied upon by the majority of the Panel.
In 1991, the DIME procedure was enacted as a means to resolve disputes pertaining to the treating physician's opinion as to MMI and impairment. Colo. Sess. Laws 1991, ch. 219, § 8-42-107(8)(b)-(c) at 1309-10; see Cordova v. Indus. Claim Appeals Office, 55 P.3d 186 (Colo.App.2002)(opinions of a DIME physician concerning MMI and medical impairment are binding unless overcome by clear and convincing evidence). There was no requirement to file a DIME request within a certain time until 1998, when § 8-42-107.2 was enacted. Colo. Sess. Laws.1998, ch. 313 at 1432.
Section 8-42-107.2 created a procedure for the selection of a DIME physician. Section 8-42-107.2(1), C.R.S.2002. But see Whiteside v. Smith, 67 P.3d 1240 (Colo.2003)(fee requirement in § 8-42-107.2 is unconstitutional because it deprives injured indigent claimants of their property interests without due process). It provides that a claimant who disputes the treating physician's medical impairment rating must file a notice and proposal to select a DIME physician within thirty days of the date of mailing of a FAL by the insurer or self-insured employer that includes an impairment rating issued in accordance with § 8-42-107, C.R.S.2002. Section 8-42-107.2(2)(a)(I)(A), (b), C.R.S.2002.
When originally enacted in 1998, § 8-42-107.2 applied to injuries that occurred on or after August 5, 1998. Colo. Sess. Laws 1998, ch. 313 at 1432. However, in 1999, the statute was amended to apply to injuries occurring as early as 1991. Colo. Sess. Laws 1999, ch. 86, § 8-42-107.2(6) at 255 (effective Sept. 1, 1999, § 8-42-107.2 is a "remedial statute and is procedural in nature," and it "shall be applicable to all open cases with a date of *1175 injury on or after July 1, 1991, for which a [DIME] has not been requested, pursuant to section 8-42-107").
Two Panel members found that claimant had thirty days from the date of mailing of the 1994 FAL because the "remedial" and "procedural" language in § 8-42-107.2(6) made the "unambiguous" provisions of § 8-42-107.2 retroactive. The third, specially concurring Panel member, finding that § 8-42-107.2 was "ambiguous," concluded that claimant had thirty days from the September 1, 1999, effective date of § 8-42-107.2(6), because that was the "triggering event" which put claimant on notice of his obligation. Employer agrees with this interpretation, adding that claimant could have requested a DIME any time between the August 5, 1998, effective date of § 8-42-107.2(2)(b), and September 1, 1999, because until the effective date of § 8-42-107.2(6), the thirty-day requirement was presumed prospective.
In addition to these two agency interpretations, the director of the Division of Workers' Compensation has yet a third. See § 8-47-101(2), C.R.S.2002 (director enforces and administers the Workers' Compensation Act); Colo. Dep't of Labor & Employment v. Esser, 30 P.3d 189 (Colo.2001)(Panel and ALJ comprise portions of the agency); Popke v. Indus. Claim Appeals Office, 944 P.2d 677 (Colo.App.1997)(director is the administrator of the agency). Implicitly finding an ambiguity, she opined that where a claimant objected to a FAL prior to the effective date of § 8-42-107.2(6), there must be a triggering event, a new or revised FAL, or a medical report, before the thirty-day period to request a DIME begins to run. Any other interpretation, in her view, "would present due process concerns." M.A. Whiteside, HB 99-1049, Selection of an Independent Medical Examiner, 14 About Claims 2 (Nov.1999).
In reliance on the director's interpretation, claimant asserts that his DIME request was timely because the ALJ's 2000 order was the triggering event which put him on notice of his obligation to request a DIME within thirty days. Resolution of this contention requires our resort to the familiar rules of statutory interpretation.
In construing statutes, courts must give effect to the underlying legislative intent. To do so, courts first look to the statutory language itself, giving words and phrases their commonly accepted and understood meanings. If the statutory language is unambiguous, there is no need to resort to interpretive rules of statutory construction. Therefore, if courts can give effect to the ordinary meaning of the words adopted by the General Assembly, the statute should be construed as written, because it may be presumed that the General Assembly meant what it clearly said. Davison v. Indus. Claim Appeals Office, 72 P.3d 389 (Colo.App. No. 02CA0922, Jan. 2, 2003); see Holliday v. Bestop, Inc., 23 P.3d 700 (Colo.2001).
However, if the statute is silent or ambiguous with respect to a specific issue, the court must determine whether the agency's interpretation is based on a permissible construction of the statute. Janssen v. Indus. Claim Appeals Office, 40 P.3d 1 (Colo.App.2001), rev'd on other grounds sub nom. Indus. Claim Appeals Office v. Zarlingo, 57 P.3d 736 (Colo.2002); see Longmont Toyota, Inc. v. Indus. Claim Appeals Office, 85 P.3d 548 (Colo.App. No. 02CA0441, Feb. 13, 2003)(interpretation given a statute by the officer or agency charged with its administration is ordinarily entitled to deference).
Here, even though § 8-42-107.2(6) expressly states that § 8-42-107.2 is applicable to all claims with a date of injury on or after July 1, 1991, for which no DIME has been requested, it is silent regarding its applicability to claimants who obtained and objected to a FAL prior to the September 1, 1999, effective date of the amendment.
This silence creates an ambiguity, and the existence of the various Division interpretations of this amendment serves to underscore that fact. Normally, we would be called upon to determine whether a single agency interpretation is based on a permissible construction of § 8-42-107.2(6). However, because of the internal inconsistencies in the various interpretations, we also must decide which of the three interpretations we adopt. See Janssen v. Indus. Claim Appeals Office, supra. That decision requires resort to the interpretative rules of statutory construction. See Davison v. Indus. Claim Appeals Office, supra.
*1176 One guiding principle is that the interpretation of a statute may not cause an absurd result. See § 2-4-201(1)(c), C.R.S.2002 (a just and reasonable result is intended); Indus. Claim Appeals Office v. Orth, 965 P.2d 1246 (Colo.1998); Support, Inc. v. Indus. Claim Appeals Office, 968 P.2d 174 (Colo.App.1998). Thus, we cannot sanction an interpretation that makes compliance impossible.
As claimant argues, he could not have known that he had to request a DIME within thirty days of the date of mailing of the 1994 FAL, given that § 8-42-107.2(6) was not enacted until 1999. Thus, the interpretation adopted by the majority of the Panel is impermissible because it is unreasonable to expect claimant to have known, at the time of the 1994 FAL, that he was required to act within a certain time. And because the lack of notice inherent in the Panel's majority interpretation might call into question the constitutionality of the amendment, we should avoid that result. See Colo. Springs Disposal v. Indus. Claim Appeals Office, 58 P.3d 1061 (Colo.App.2002). We therefore conclude that the interpretations by the majority of the Panel and the Director are not permissible.
In contrast, the interpretation of the specially concurring Panel member is correct because she recognizes that a claimant's opportunity to request a DIME would be foreclosed if the time for the request expired prior to the effective date of the amendment. And we agree that the stated purpose of § 8-42-107.2(6)  to "improve and simplify" remedies already existing under the Act  is furthered if the thirty-day period begins to run from the September 1, 1999, effective date of § 8-42-107.2(6).
Furthermore, statutes are presumed to operate prospectively. Section 2-4-202, C.R.S.2002; see Colo. Const. art. II, § 11 (General Assembly shall pass no law retrospective in its operation). Although the majority of the Panel relied on Vetten v. Industrial Claim Appeals Office, 986 P.2d 983 (Colo.App.1999), for the proposition that application of a statute to a pending claim for relief does not violate the prohibition of retrospective legislation when the statute effects a change that is only procedural or remedial in nature, we agree with the specially concurring Panel member that this case is distinguishable. Vetten involved a claimant's petition to reopen a 1975 injury claim that was subject to the 1988 amendments to the reopening statute, and the court rejected the contention that application of the amendments was unconstitutional retrospective legislation. However, because those amendments involved a statute of limitations for initiating a claim, they did not, as here, foreclose the claimant from proceeding with an active and ongoing claim for relief.
Here, September 1, 1999, was the date which triggered the applicability of the statute because as of that time, claimant was on notice of his obligation to request a DIME. Accordingly, we hold that for claimants who obtained and objected to a FAL prior to the effective date of § 8-42-107.2(6), the thirty-day period for requesting a DIME began to run on September 1, 1999.
In so holding, we do not lightly dismiss the director's stance that a "triggering event," other than the effective date of the amendment itself, was necessary before the time period could run. However, if employer had, for instance, filed an amended FAL, that filing would simply "trigger" the time period as it related to the new FAL, not the one filed in 1994. There was no amended FAL here, and there is no statutory requirement that employer "refile" the 1994 FAL simply to prompt claimant to act.
Likewise, if claimant had successfully established that his aggravation was related to the 1992 injury, then the DIME process could have commenced anew. Claimant's failure to appeal the ALJ's 2000 order concluding that there was no aggravation foreclosed that possibility, and therefore, contrary to claimant's argument, that order cannot be deemed a "trigger" for the thirty-day period.
Accordingly, because claimant had thirty days from September 1, 1999, to request a DIME, and no timely request was filed, the ALJ did not err in finding that claimant lost the right to dispute the treating physician's *1177 impairment rating and that the zero percent rating is therefore binding.
The order of the Panel is affirmed.
Judge MARQUEZ and Judge CARPARELLI, concur.